W. L. DAVIDSON ET AL. V. T. J. WALLINGFORD ET AL.

| 88 | 619 |
| 92 | 307 |

No. 324.

**1. Leading Questions.**

A witness was asked: "Please state whether you are testifying from your own knowledge or from what people have told you. If you say it is from your own knowledge, state what part; also, if you state some of it is from what some one has told you, please state what part, and who that is dead told you." To the question it was objected, that it "was leading and suggests to the witness, and assumes that the parties who made the statements elicited were dead." *Held*, the objections were not well taken. The question is not leading ................................ .................... ..... 621

**2. Pedigree—Hearsay Testimony.**

It was competent, to prove the death of the grantee under whom plaintiffs claimed as heirs, for a witness, after stating that his brother, mother, and brother-in-law, from whom he had the information, were dead, to testify: "I heard he died on his way to Mexico. * * * I know my mother, brother, and brother-in-law told me about W. W. Wallingford; that he came to Texas in 1833 or 1834; taught school in Gonzales County; started to Mexico. * * * When I last heard of him he lived in Gonzales County, Texas. I believe he died on his way to Mexico." The statement about his teaching school was irrelevant, but immaterial .... .................621, 622

**3. Hearsay.**

It was incompetent for a widow as a witness to testify, to sustain a conveyance to her husband, that he "frequently spoke of owning the certificates, and of the transfer of them from Wallingford. He said he lost the transfer of them while crossing the Colorado River." It was hearsay ............ 622

**4. Landlord and Tenant—Tenancy.**

The relation of a tenant under a lease is not affected by the sale of the land by the landlord, nor by a breach on part of the landlord of an agreement to give the tenant the privilege of purchasing. The purchaser can not be affected in his rights in the land by transactions between the tenant and others claiming the land ..... ................................................. 622

**5. Certificate of Acknowledgment to Deed.**

Since the Revised Statutes went into effect (September 1, 1879), the certificate of the officer must show that the person making the acknowledgment was known to him to be the grantor in the conveyance, or that proof of the fact was made before him .............................................. 623

**6. Parol Sale of Land Certificate—Charge.**

There being circumstantial evidence showing a sale of the land certificate whose ownership was in issue, the court should have charged the jury to the effect, that title to a land certificate could be transferred by a verbal sale without a written assignment. The instruction given upon the subject was misleading. It grouped the elements of a sale of the certificate together with a direction that it was incumbent to prove that each of them existed ........ .................................................... 623

**7. Charge Misleading.**

A charge, that "the evidence introduced before you [enumerating circumstances in evidence] are none of them evidence of title either to the land or the certificate, or either of them, but you are to consider such matters only as circumstances tending to show, if they may, whether or not there has been a sale of the certificate." The jury may have believed therefrom that they could not find from the testimony that the title had passed ..... 624

8. Practice—Evidence.
Depositions of a woman were offered. Much of her testimony had been ex-
cluded as hearsay. It was error to instruct the jury, touching that part
admitted, that "If it clearly appears to you that the testimony of the wit-
ness —— to any material fact testified to in her depositions is based upon
what others told her, considering as you must the whole of her deposition,
you should disregard the same." The testimony should go to the jury
without comment affecting its weight.............................. 624

9. Charge.
It is error to single out by name a witness and charge the jury that they are
judges of her credibility and of the weight to be given to her testimony.
It is not relieved by adding, that they were like judges as to credibility of
all the other witnesses ......................................... 624

10. Presumption.
Evidence showed that the grantee, the intestate, left eight brothers and sis-
ters, including the ancestor of the plaintiffs, and that the other brothers
and sisters had all married, but had died, leaving children. What became
of these children does not appear. In the absence of evidence, it is not the
presumption that they too are dead ................................ 625

11. Trespass to Try Title by Joint Tenant.
A tenant in common, by action of trespass to try title, can not evict a defend-
ant by merely showing that he (the plaintiff) has an undivided interest in
the land. He can not evict a joint tenant, but only a trespasser; and to
recover, the plaintiff should prove that the defendant is a trespasser...... 625

12. Trespass to Try Title by Joint Tenant—Limitation.
Filing suit by one or more joint tenants in trespass to try title only stops limi-
tation as to their interest in the land. The statute runs as to others, unless
prevented by coverture, etc., which must be shown..................... 625

ERROR to Court of Civil Appeals for Third District, in an appeal from Coleman County.

The opinion and the head notes sufficiently state the matters in issue.

*Sims & Snodgrass,* for plaintiffs in error.—1. Where a lessee for a term of years enters into possession of land, and the lessor, after execution of the lease, parts with the title to the land by sale, the lessee by operation of law becomes the tenant of the vendee, and adverse possession by such lessee of the land inures to the benefit of the vendee. Heflin v. Burns, 70 Texas, 347; Hearne v. Lewis, 78 Texas, 276.

2. A tenant can not change the nature or character of his possession of land without first giving notice and returning the actual possession. Neither can he make himself the tenant of any one else. Taylor on Landl. and Ten., secs. 55, 56, 65; Juneman v. Franklin, 3 S. W. Rep., 562; Fowler v. Simpson, 15 S. W. Rep., 682; Flannagan v. Pearson, 61 Texas, 302.

3. Possession of tenant after the expiration of his lease for a term of years is the possession of the landlord. In case of holding over in absence of any further contract, he holds over under the terms of his original lease. Taylor on Landl. and Ten., secs. 22, 525; Leopold v. Snyder, 23 S. W. Rep., 825; Juneman v. Franklin, 3 S. W. Rep., 562;

Bateman v. Maddox, 26 S. W. Rep., 53; San Antonio v. French, 80 Texas, 575.

4. The statute of limitation running in favor of a party in possession is not stopped by the filing of a suit by one tenant in common as against the interest of cotenants not joined. The statute is only stopped as to the interest actually owned by the party suing; as against the interest of all cotenants not parties to the suit, the statute continues to run to the time of trial. Stovall v. Carmichael, 52 Texas, 384; Ney v. Mummie, 66 Texas, 268; Johnson v. Schunmacher, 72 Texas, 334; Boon v. Knox, 16 S. W. Rep., 448.

5. Other tenants in common having been proved, it is presumed, in absence of proof otherwise, that they still live. Best on Ev., 299 (Am. ed. of 7th Eng. ed.); Van Buren v. Cockburn, 14 Barb., 118; Ely v. Ely, 6 Gray, 439; United States v. Wiggins, 14 Pet., 334; Comm. v. Pike, 49 N. H., 339; Graves v. Colwell, 90 Ill., 612; Stevens v. McNamara, 36 Me., 176; Spears v. Burton, 31 Miss., 547; Laws. on Presump. Ev., 192; 1 Am. and Eng. Encyc. of Law, 40, 41.

*T. J. White* and *J. P. Ledbetter,* for defendants in error.

GAINES, CHIEF JUSTICE.—This suit is an action of trespass to try title, and was brought by the defendants in error to recover of plaintiffs in error a tract of 640 acres of land, patented to W. W. Wallingford, by virtue of a bounty warrant issued to him as a soldier of the Republic, on the 2nd day of July, 1838. The defendants pleaded not guilty, and the statute of limitations of five years.

The plaintiffs claimed the land in controversy as the heirs of the patentee, and in support of their title introduced in evidence the deposition of T. J. Wallingford, who testified, in substance, that members of the family had told him that W. W. Wallingford had resided in Gonzales County, and that he died in 1846, on his way to Mexico; that his father and mother were both dead, and that he left brothers and sisters surviving him, eight in number; that the witness was a son of one Nicholas Wallingford, one of the brothers of W. W. Wallingford, who was dead; that the plaintiff, L. B. Wallingford, was also a son of Nicholas, and that the other plaintiffs were the nephew and nieces of the witness.

Sundry portions of the deposition of this witness were objected to, but were admitted by the court. Exceptions were taken, and the rulings of the trial court in admitting the evidence were assigned as error in the Court of Civil Appeals and in this court. We think none of the objections were well taken. The interrogatory objected to, as shown by the defendants' bill of exceptions number 2, in our opinion can not be deemed leading, but if so, the fact elicited by it was testified to by the witness in other parts of his deposition, so that if the admission of the answer was erroneous, the error was harmless. It was competent to prove the death of W. W. Wallingford by the dec-

larations of members of the family, who were themselves dead. The fact that he once taught school in Gonzales County is, in view of the issues developed by the testimony, irrelevant, but is so utterly without bearing on the case in any possible aspect as to render all the objections to it frivolous. It could not have possibly prejudiced the defendants.

Under their plea of not guilty, the defendants asserted title to the land under a transfer of the certificate from W. W. Wallingford to one P. B. Bickford, claimed to have been made before the location of the survey. P. B. Bickford was the husband of E. J. Bickford, one of the defendants, and had been dead some years when the suit was brought. In support of this defense the defendants relied mainly upon the testimony of Mrs. E. J. Bickford, whose depositions were taken by them and offered upon the trial. She testified, that her husband had possession of two certificates granted to W. W. Wallingford, one of which was located upon the land in controversy, and that he claimed to own them. She also deposed, that he "frequently spoke of owning the certificates, and of the transfer of them from W. W. Wallingford. He said he lost the transfer of them while crossing the Colorado River." Upon objection on part of the plaintiffs, the testimony quoted was excluded. The testimony was clearly hearsay, and there was no error in the court's ruling. The answers of the witness, which were objected to, as shown by defendants' bills of exceptions numbers 10 and 11, were subject to the same objection, and were properly excluded.

It was proved, that about five years before the suit was brought one E. M. Phelps leased the land to E. Y. Thompson, who was one of the defendants in the suit, and that Thompson went into possession under the lease, and continued in possession until the time of the trial. Shortly after the lease was made, Phelps sold the land to Mrs. Bickford, one of the defendants. The lease contained a stipulation, that upon its termination the lessor should pay Thompson for such improvements as he might put upon the premises, not to exceed in value $1000; and also, that in the event Phelps determined to sell the land, the lessee should have a prior right to purchase. The defendant Thompson, being upon the stand as a witness for the defendants, testified upon cross-examination, in effect, that he had been willing to turn over the land to whomsoever had the better title and would pay him for his improvements, and that he had an agreement with the plaintiffs' attorneys, that if they gained the case they would pay therefor. This testimony was admitted over the objection of defendants, and we think that this was error. Upon the conveyance by Phelps to Mrs. Bickford, Thompson became her tenant, and he certainly remained such until he repudiated the lease. Neither willingness to turn over the premises to whomsoever had the better right, nor the promise of plaintiffs' attorneys to pay him for his improvements, if they recovered the land, in any measure affected this relation.

It was error, for the same reason, to admit Thompson's testimony that Phelps never offered to sell him the land. It does not appear that he ever offered to buy. But even if it did so appear, we do not see that the fact would have affected the rights of the parties. Phelps' violation of his agreement to give him a preference in case of a sale, would at most have entitled him to abandon the lease. At all events, it is clear that as long as he remained upon the land he continued the tenant of Mrs. Bickford and of her grantees, her codefendants in the suit. Heflin v. Burns, 70 Texas; 347; Hearne v. Lewis, 78 Texas, 276.

There was no error in the exclusion of the deed from Mrs. Bickford to Wertheimer. The certificate does not show that the person who acknowledged the deed was either known to the officer or proved before him to be the person whose name was signed to the conveyance. Since the Revised Statutes went into effect, the certificate of the officer must show that the person making the acknowledgment was known to him to be the grantor in the conveyance, or that proof of the fact was made before him. McKie v. Anderson, 78 Texas, 207. There was no attempt to prove the deed at common law.

It is assigned, that the court erred in refusing to give to the jury an instruction to the effect that a title to a land certificate could be transferred by a verbal sale, without a written assignment; and we are of opinion that there was error in refusing the instruction. The jury may have concluded that no written conveyance was proved; and yet the circumstances adduced in evidence were such as may have induced them to believe that Wallingford sold the certificate to Bickford. The trial judge was probably of the opinion that he had sufficiently charged the law on that subject in his general instructions. But as we think, the court's charge, as pointed out in defendants' assignments, was erroneous in several particulars. We doubt if the instruction upon that issue was not calculated to mislead rather than enlighten the jury. That portion of the charge is as follows: "Such sale may be presumed by you from facts and circumstances in evidence, but such circumstances must show not only that the possession of the certificate was transferred by W. W. Wallingford to P. B. Bickford, but they must also show that such transfer of possession was made with the purpose and intention of said Wallingford to pass title thereto, and there must have been an agreement between them to that effect; each fact or circumstance tending to show such sale must be consistent with the other facts and all must be consistent with the main fact, to wit, the sale of such certificate, and inconsistent with any other intention with reference to the disposition of said certificate by said Wallingford and said Bickford." The instruction as to the elements of a sale of the certificate, together with a direction that it was incumbent upon the defendants to prove that each of their elements existed, if not incorrect as propositions of law, was calculated to induce the jury to conclude that the testimony of the defendants bearing upon the issue should have a degree of particularity which the law does not require in such

a case, and thereby to mislead them. The broad question to be determined by the jury was, did P. B. Bickford become the owner of the certificate? And this was to be determined from the circumstances established by the evidence. These circumstances were the possession of the certificate by Bickford and his claim of ownership, if he did so possess and claim it; the location of the land by him under that claim, and the payment of taxes by those claiming under him; together with the failure of the immediate heirs of W. W. Wallingford to assert title either to the land or certificate, and the nonassertion of any adverse claim from any quarter until this suit was brought. There was no evidence pointing to any particular transaction in which the existence of one or more of the elements of a valid sale were brought into question, and hence the first part of the instruction was inappropriate. The latter portion, if proper in any civil suit, could only have served to confuse the jury in the present case.

We are of opinion that the following charge was also calculated to confuse and mislead the jury: "The evidence introduced before you of the possession of the land certificates in the name of W. W. Wallingford, or of any muniment of title relating thereto, or of any claim made to such certificate, or the land, or payment of taxes on such land, are none of them evidence of title either to the land or the certificate, or either of them, but you are to consider such matters only as circumstances tending to show, if they may, whether or not there has been a sale of the certificates." The jury may have understood the charge to mean, that however cogent the circumstances pointed out may have been to induce the belief that Wallingford had sold the land to Bickford, they were not sufficient of themselves to authorize them to find that the title had passed.

We think the court also erred in charging the jury, in effect, to disregard any portion of Mrs. Bickford's testimony which clearly appeared to be based upon what others had told her. It is the duty of the court, upon objection to evidence, to determine its admissibility. The depositions of the witness were read to the jury, and much of her testimony had been excluded, upon the ground that it was hearsay. What was admitted, either over objections or without objection, should have been left for the consideration of the jury, without comment affecting its weight and without devolving upon them a duty which it was the function of the court to perform.

We are of the opinion, that the court also erred in singling out Mrs. Bickford by name, and charging the jury that they were the judges of her credibility and the weight to be given to her testimony, although the charge was accompanied by the instruction, that they were also the judges of the credibility of all other witnesses. The court should simply have charged, that the jury were the judges of the credibility of the witnesses and the weight of the evidence. The effect of the instruction was to lead the jury to believe that there was more question as to the credibility of the witness who was named than as to that of

the other witnesses. Whether such was the fact or not was a matter solely for the determination of the jury, without any intimation, either direct or indirect, as to the opinion of the judge.

We do not deem it necessary to discuss in detail the charges bearing upon the issue of the statute of limitations. Less than five years had elapsed from the time Thompson took possession under the lease from Phelps until the suit was brought. Hence the court correctly instructed the jury, that the plaintiffs were not barred by the statute as to the recovery of their own interest. But the evidence failed to show, even prima facie, that they were the sole heirs of the grantee of the certificate. The testimony disclosed, that he had in all eight brothers and sisters—including the ancestor of the plaintiffs; and that the other brothers and sisters had all married, but had died, and had left children. What became of these children does not appear. We know of no rule that would authorize either the court or jury to presume, without some evidence, that the children of the deceased brothers and sisters of W. W. Wallingford were dead. In the absence of evidence, the contrary presumption prevails. Laws. on Presumptions, 192. The bringing of the suit suspended the statute as to plaintiffs, but did not suspend it as to their cotenants. Hence if the possession of the land through Thompson continued for the full period of five years, and was accompanied with the payment of all taxes by the defendants under a duly registered deed, they acquired title to the interest of plaintiffs' cotenants by the statute of limitations, unless some one or more of them were laboring under the disability of minority or coverture at the time possession was taken. There was no proof of such disability, and if any existed, the burden was upon the plaintiffs to show it. We do not understand it to be the law that a tenant in common can, by an action of trespass to try title, evict the defendants by merely showing that he has an undivided interest in the land. The theory upon which he recovers the exclusive possession is, that while as against his cotenants he is entitled only to a joint possession, as against a trespasser he is entitled to the exclusive possession. Hence it follows, as we think, that when a tenant in common seeks to recover of a defendant the exclusive possession of land, he should prove not only his own title to an undivided interest, but also that the defendant has no title to any interest.

Ordinarily, when one tenant in common brings a suit to recover land, in proving his own title he proves that of his cotenant, and thereby shows that the defendant is not entitled to the possession. But in this case, the evidence not only failed to show title in the plaintiffs' original cotenants, but showed at least prima facie that at the time of the trial the defendants, Mrs. Bickford, Davidson, and Fly, had acquired title to the interest of such cotenants by virtue of the statute of limitations for five years. Therefore, the verdict of the jury awarding the plaintiffs a recovery of the whole land should have been set aside.

For the errors pointed out, the judgments of the Court of Civil Appeals and that of the District Court are reversed and the cause remanded.

*Reversed and remanded.*

Delivered November 14, 1895.