## DOLBEAR et al. v. GULF PRODUCTION CO. et al.

## PENN et al. v. PHŒNIX DEVELOPMENT CO. et al.

(Circuit Court of Appeals, Fifth Circuit. August 10, 1920.)

No. 3441.

1. **Trespass to try title** ⊂⇒41(1)—**Evidence insufficient to establish title through lost deeds.**

   Where plaintiffs claimed through alleged lost deeds 50 years and more old, the existence of which was not shown by the testimony of any one who had ever seen and read them, all persons having direct knowledge respecting the alleged conveyances being dead, and the county records had been burned, and where neither plaintiffs nor those under whom they claimed had ever been in possession of or exercised acts of ownership or control over the land, which was vacant and unused, nor paid taxes, except for three years, documents and correspondence showing that they claimed the land, and a general supposition of their ownership in the neighborhood, *held* insufficient to establish title in plaintiffs as against purchasers without notice from the heirs of the record owner.

2. **Adverse possession** ⊂⇒104—**Grant not presumed from evidence consistent with its nonexistence.**

   The presumption of grant to one not having record title can never fairly arise where all the circumstances are perfectly consistent with the nonexistence of the grant.

3. **Evidence** ⊂⇒317(5)—**Declarations of ownership by persons not in possession incompetent as hearsay.**

   Declarations of ownership by persons not in possession or exercising acts of ownership or control of land are hearsay and incompetent to prove title.

4. **Appeal and error** ⊂⇒721(1)—**Joint assignment of error must be good as to all joining.**

   A joint assignment of error is not available, unless it is good as to all joining.

   Hutcheson, District Judge, dissenting.

In Error to the District Court of the United States for the Eastern District of Texas; Duval West, Judge.

Actions at law by Angeline Louise Bailey Dolbear and others against the Gulf Production Company and others and by Caro Minor Penn and others against the Phœnix Development Company and others. Judgments for defendants, and plaintiffs bring error. Affirmed.

Charles T. Butler and Oliver J. Todd, both of Beaumont, Tex., N. B. Morris, of Palestine, Tex., and Jacob C. Baldwin and W. W. Moore, both of Houston, Tex. (Orgain, Butler, Bolinger & Carroll, of Beaumont, Tex., and Kennerly, Williams, Lee & Hill of Houston, Tex., on the brief), for plaintiffs in error.

A. D. Lipscomb, Sol E. Gordon, and W. D. Gordon, all of Beaumont, Tex., C. L. Carter, T. J. Lawhon, and Ed. P. Phelps, all of Houston, Tex., and J. Blanc Monroe and Monte M. Lemann, both of New Orleans, La., for defendants in error.

Before WALKER and BRYAN, Circuit Judges, and HUTCHESON, District Judge.

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

BRYAN, Circuit Judge. Plaintiffs in error sued defendants in error in trespass to try title to a portion of the east half of a league of land in Liberty county, Tex. The two cases were tried together, though not consolidated, and resulted in judgments for defendants in error, based upon directed verdicts.

Jesse Devore, who obtained a grant of the entire league in 1835, is the common source of title. The individual plaintiffs in error claim as heirs of devisees of Rufus Dolbear. Republic Production Company has deeds from its coplaintiffs in error, and in addition acquired, pendente lite, the title to a small undivided interest, estimated by the trial court at 1½ acres, which passed by descent to three great-grandchildren of Jesse Devore. Defendants in error trace their title from all the heirs of Jesse Devore, other than those just referred to, and from one J. J. Moor, who procured a tax deed in 1879.

[1] In order to show title out of Jesse Devore into Rufus Dolbear, plaintiffs in error rely upon three alleged lost deeds to the east half of the league, as follows: (1) From Jesse Devore to Edwin or Edward Hall, dated between 1835 and 1851. (2) From Hall to A. B. Lawrence, dated 1851. (3) From C. L. Cleveland, as administrator of the estate of A. B. Lawrence, to Rufus Dolbear, dated 1868 or 1869. The public records of Liberty county were destroyed by fire December 12, 1874. Search for the disputed deeds and inability to find them being shown, an effort was made to prove their existence and contents by secondary evidence.

Ada C. Bailey testified that her father had in his possession the deeds claimed to have been lost; but the witness did not examine the deeds, and based her testimony upon statements made to her by her father and sister. Assessments were made at the state capital in Travis county, for 1850 to the estate of Hall, for 1851 to Edward Hall, and from 1852 to 1858, inclusive, to A. B. Lawrence, by Charles Buckholtz. No assessments were shown from 1859 to 1862, inclusive. Assessments were made in Liberty county for 1863 and 1864 to C. Higginbotham, for 1867 to "Unknown," for 1868 to A. B. Lawrence, by C. L. Cleveland, Adm., for 1869 to 1871, inclusive, to Rufus Dolbear, by C. L. Cleveland, agent. No more assessments were shown until 1878, when the property was assessed as unknown. The only payments of taxes for the years above given were made by E. Hall for the year 1850, and by Edward Hall for the year 1851. Evidence was offered that C. L. Cleveland paid the taxes for the year 1870 as agent of Rufus Dolbear, but it was not shown that Dolbear ever reimbursed Cleveland, and it appears from a letter from Cleveland in August, 1873, that he had not been reimbursed up to that time. Edward Hall dealt in Texas lands from 1840 to 1860. In 1837 Rufus Dolbear married Clothilde Pixley or Lawrence, who was an orphan and had been a member of the family of A. B. Lawrence for several years.

There was produced from proper custody an unprobated will of Rufus Dolbear, dated June 11, 1867. In listing his possessions, he stated in this revoked will that he had advanced $145 to Judge Fooley, $125 of which was to be paid to Judge Cleveland, of Liberty, Tex., "to at-

tend to the Jesse Devore grant of half a league of land near Liberty—2,222 acres—to secure the land to me." In disposing of his property, he gives half of the land in Texas to his son. Rufus Dolbear's will, made in 1872, and probated in New Orleans, but not in Texas, contains this statement:

"A half league of land in Liberty county standing in my name belonged half to myself and half to my son, Rufus L."

An instrument, purporting to be a copy of a declaration of trust executed by Rufus Dolbear October 10, 1868, in the handwriting of N. E. Bailey, acknowledged that—

"The half of a certain league of land bought in my name at the succession sale of A. B. Lawrence in the county of Liberty, Texas, belongs to my son Rufus L. Dolbear, and that I am to make him a title to the same as soon as I can learn what would be a just division of the same."

August 23, 1873, C. L. Cleveland wrote a letter to Rufus L. Dolbear, son of Rufus Dolbear, stating that a Mr. Palmer wanted to buy 200 acres of "the Devore" owned by Rufus Dolbear. October 28, 1873, Mr. Cleveland wrote to Levi Dolbear, a brother of Rufus Dolbear, that he had inclosed to Mr. Bailey the declaration of trust, which he had procured to be recorded in Liberty county. A letter from Levi Dolbear, dated November 29, 1874, to Jules V. Penn, a grandson of Rufus Dolbear, mentioned the Texas land and stated that Rufus Dolbear had conveyed one-half of it to Rufus L. Dolbear. There was a letter from Wharton Branch, dated April 11, 1879, to the heirs of Rufus Dolbear, in which he states that he had learned from his uncle, C. L. Cleveland, that a tract of land in Liberty county belonged to Rufus Dolbear. There was other correspondence between John McDougall, a real estate agent living in New Orleans, and members of the Dolbear family, and powers of attorney from the Dolbear heirs to him authorizing him to make claim for them to lands in Texas, but not specifying any particular lands.

Rufus Dolbear visited the lands for three days, shortly after the Civil War, and stated to a witness living near by that he owned them. Claimants under the Dolbear title filed suit in Liberty county, Tex., in 1891, against J. B. Simpson and Wharton Branch, for title and possession of the east half of the Devore league, which they dismissed in 1893. Their claim was then allowed to lie dormant until these suits were brought, April 6, 1918.

Several witnesses testified that the land was spoken of as the Dolbear land by some of the settlers living near it. Defendants in error claim to be bona fide purchasers for value and without notice of the title asserted by plaintiffs in error. Their agent procured abstract of title, employed attorneys to examine it, and paid valuable consideration. The only portions of the east half of the Devore league in actual possession of any of the parties was under the tax title of J. J. Moor. There was no evidence indicating that defendants in error had any notice or knowledge of the claim of plaintiffs in error. The deeds under which the defendants claim were not quitclaim deeds, but purported to convey the title.

Jesse Devore died in 1849, Edward Hall in 1879, A. B. Lawrence in 1862, Rufus Dolbear in 1872, Levi Dolbear in 1888, Rufus L. Dolbear in 1868, C. L. Cleveland in 1892, and John McDougall in 1906.

There was no proof of the disputed deeds. 3 Wigmore on Evidence, § 1957. Shifflet v. Morelle, 68 Tex. 387, 4 S. W. 843; Potts v. Coleman, 86 Ala. 94, 5 South. 780; Edwards v. Noyes, 65 N. Y. 126.

Whether the evidence was sufficient to justify a presumption of the missing deeds in the chain of title of plaintiffs in error is the important question which immediately arises. It is the settled law that a deed may be presumed where possession of real property has been continued during the period prescribed by the statute of limitations (Fletcher v. Fuller, 120 U. S. 534, 7 Sup. Ct. 667, 30 L. Ed. 759), and it appears to be the rule in Texas that long-continued acts of ownership or control, acquiesced in by the owners of the apparent title, will supply the requirement of possession, and may create a like presumption. Baldwin v. Goldfrank, 88 Tex. 258, 31 S. W. 1064; Walker v. Caradine, 78 Tex. 493, 15 S. W. 31.

The application of either of the above rules of presumption is fatal to plaintiffs in error. They have never been in possession. All the sundry persons who, from time to time, occupied or used parts of the land, did so in recognition either of the record title or the tax title.

The acts of ownership or control relied upon by plaintiffs in error are: Assessments of taxes; payments of taxes, for one year each, by E. Hall, Edward Hall, and Cleveland; Dolbear's inspection of the land shortly after the Civil War; and the circumstance that Dolbear's devisees or their heirs brought suit in trespass to try title in 1891, which they dismissed in 1893.

The assessments fom 1850 to 1858 were not made in Liberty county, where the Devore heirs lived, but at the state capital. The other assessments were to unknown and different parties, were not continued long enough to the same party, and were never followed up or accompanied by any act of dominion which would likely come to the knowledge of the apparent owners. The Texas decisions clearly show that acquiescence is as essential as dominion, and, of course, there can be no acquiescence without knowledge.

It cannot plausibly be contended that the payment, for 3 years in 20, of taxes on vacant and unused land, not otherwise visibly dealt with, is inconsistent with the fact that the holders of the record title continuously claimed to be, and in reality continued to be, the owners of the land. There was no evidence that the Devore heirs were ever informed of the visit by Dolbear upon their land, or ever heard of the Dolbear claim. The Dolbear claimants never did anything with reference to the land which the Devore heirs could reasonably be expected to know of or to resist.

[2] The presumption of grant to one not having record title can never fairly arise, where all the circumstances are perfectly consistent with the nonexistence of the grant. Ricard v. Williams, 7 Wheat. 59, 5 L. Ed. 398. The failure of the Dolbear heirs to test out their title while Hall, Levi Dolbear, Cleveland, and McDougall were living, by whom the deeds could have been established and re-established if they

ever existed, is more consistent with the nonexistence than with the existence of the title asserted.

The remainder of the evidence offered by plaintiffs in error, whether admitted conditionally or rejected, consisting of Miss Bailey's testimony, of the wills of Rufus Dolbear, of what purported to be a copy of the declaration of trust, of miscellaneous letters from Cleveland to Rufus L. Dolbear and Levi Dolbear, from Levi Dolbear to Jules Penn, from Wharton Branch to the heirs of Rufus Dolbear, and from McDougall to members of the Dolbear family, of powers of attorney from Dolbear's devisees and heirs, etc., constituted at best only claims of title.

[3] Uniformly, declarations by a party in possession of real property, and in Texas, perhaps, by one not in possession, but exercising acts of ownership or control, are admissible to qualify, explain, or color the possession, acts of ownership, or control. 3 Wigmore on Evidence, §§ 1772 to 1776, 1778, 1779, 1780; Fletcher v. Fuller, 120 U. S. 534, 7 Sup. Ct. 667, 30 L. Ed. 759. But in the absence of possession, or acts of ownership or control, such declarations violate the hearsay rule, and are not competent. 3 Wigmore on Evidence, supra; Davidson v. Wallingford, 88 Tex. 622, 32 S. W. 1030; Mooring v. McBride, 62 Tex. 309, text 311, Greenleaf on Evidence (16th Ed.) § 108; 1 Elliott on Evidence, §§ 539, 540, 541.

There is nothing in the evidence to show either actual or constructive notice of the claim of plaintiffs in error. Wethered v. Boon, 17 Tex. 143, text 151; Bounds v. Little, 75 Tex. 320, 12 S. W. 1109; Wilson v. Wall, 6 Wall. 83, 18 L. Ed. 727. If it be true that some of the neighbors living near this property heard it spoken of as the Dolbear property, that circumstance would not prevent the defendants in error from being purchasers without notice. Bounds v. Little, supra.

[4] It is contended that the instruction to find for defendants in error was erroneous as to Republic Production Company, because that plaintiff in error acquired title to the small undivided interest which passed by descent to some of the Devore heirs. The only assignments of error are joint ones, of all the plaintiffs in error. The other plaintiffs in error are not entitled to a reversal because of error affecting only Republic Production Company. Republic Production Company cannot complain, because it has not separately assigned the instruction as error. A joint assignment of error is not available, unless it is good as to all joining. 3 Amer. Dig. (Century Ed.) title Appeal and Error, § 2985; 1 Amer. Dig. (Decennial Ed.) same title, § 721(1); 1 Amer. Dig. (Second. Dec. Ed.) same title, § 721(1).

No one of the assignments of error is sustainable, and the judgments are therefore affirmed.

HUTCHESON, District Judge (dissenting). I agree with the majority of the court in their conclusion that—

"The presumption of a grant to one having record title can never fairly arise, where all the circumstances are perfectly consistent with the nonexistence of the grant."

I also agree with their conclusion that—

"The facts in this case are more consistent with the nonexistence than with the existence of the grant."

I am of the opinion, however, that this latter conclusron is one of fact, at which it was the province of the jury, and not of the court, to arrive, and I cannot concur in that portion of the opinion which declares that plaintiffs failed on this issue as matter of law.

Notwithstanding this view, however, I think it clear that the judgment, except as to the small interest claimed by the Republic Production Company, under the Devore heirs, should be affirmed upon the issue of innocent purchase, which I agree with the majority in thinking the evidence established as matter of law for defendants.

As to the Republic Production Company, I agree with the majority that there is authority for their position that "a joint assignment of error is not available, unless it is good as to all joining," but I am of the opinion that this technicality of construction, if it ever prevailed in the federal courts, has been abolished by the recent act of Congress, the purpose of which was, and the effect of which ought to be, to prevent the loss on appeal of a substantial right through some modal or formal failure. I therefore, while concurring in the affirmance of the main portion of the judgment on the ground above stated, dissent from the judgment of affirmance in the particular last mentioned.