HAYDEN H. EDWARDS, ADM'R, v. WILLIAM H. BEAVERS.

That a woman who was the head of a family, was entitled under the Colonization Laws of Coahuila and Texas, and under the Constitution of the Republic, to the grant of a league, or of a league and labor of land, is a proposition not to be questioned.

In the case on hand, for instance, the husband, Juan Lazarino, died without obtaining a grant, in the summer of 1835, leaving a widow and children. There can be no doubt that under the laws of colonization, his surviving widow, as the head of the family, might have applied for, and would have had the legal capacity to receive, in her personal character, the grant of land; and that the children, as the heirs of the deceased husband, could not have legally claimed a proportion of the grant as community property. But had she applied as the representative of her deceased husband, it is very possible that the officers of that day might have issued the title in her representative capacity; and if so, such title could not be questioned as void, nor could the widow, or persons claiming under her, have impeached the right of the heirs to a share of the estate.

The grantee, Maria Josefa de la Vega, was a widow with four children at the Declaration of Independence. Clearly then, she had a family, and she was the head of that family. She resided in Nacogdoches, and continued to reside there until the date of the certificate. Here was a combination of the elements necessary to vest in her a complete right to a headright certificate for a league and labor in her personal capacity.

But if the husband had been alive at the Declaration of independence, he would have been entitled to the grant; and had he died before the application for the certificate, it must, if issued to the widow at all, have issued to her as

representing the estate of the deceased, and would have enured not exclusively to her own, but also to the benefit of the heirs of deceased.

In the former case, where the widow is entitled in her independent right, the addition of the term of " widow" or " widow of such an one," to the name of the grantee in the certificate and patent, must be regarded as words of personal description, mere surplusage, and not affecting the right of property.

But in the other case, where the grant should be to the representative of the husband, if it be issued to the person who had been the wife, the addition of " widow " would have the effect of showing that it was received by her as being his widow ; and of consequence, that she was holding in a trust and representative right.

There may be cases in which the widow, who was the head of a family at the Declaration of Independence, applied as the representative of the deceased husband, and the certificate may have issued to her as the widow merely of the deceased, and as intending to represent his estate, and not claiming as independent head of a family. If there be such grants, the fact of relinquishment by the grantee, of her right to an independent grant as head of a family, must be established by most decisive proof. Neither the addition of the word widow, or widow of the deceased husband, or any fact which appears in this cause, would have the slightest effect in showing such a renunciation of right, or that the grantee intended to take the half, when she was entitled to the whole of a league and labor.

It is believed, however, that in many cases of this description, where the husband died before the Revolution, the widow did not apply in her separate right for a grant, but the certificate was issued either to the administrator or heirs of the deceased husband. In such cases, the widow may be regarded as having renounced her right to a personal grant as head of a family, and could claim but a moiety of what may remain after the payment of the debts of the community.

Error from Cass. Tried below before the Hon. William W. Morris.

The facts are stated in the Opinion.

*C. A. Frazier*, for plaintiff in error, argued that the widow took in her own right as the head of a family at the Declaraion of Independence.

*T. J. Jennings, Hyde* and *Ochiltree*, for defendant in error, argued that the children were entitled under the constitutional provision in favor of orphans ; and that, as they could not be

so entitled, and the widow be also so entitled, as the head of a family through them, it must be held that the widow took in right of herself one half of the land, and in right of the children the other half.

HEMPHILL, CH. J.  Juan Lazarino resided at Nacogdoches from 1826 to the time of his death in the summer of 1835. His wife, Maria Josefa de la Vega, (who had been married to him for fifteen years,) and four children survived his death. They continued to reside in the country, and in June, 1838, the widow, Maria Josefa de la Vega, applied for and obtained a hadright certificate for a league and labor of land. In her application she is styled Maria Josefa de la Vega, widow of Juan Lazarino. The certificate is not in the record, but is alleged to have been issued to Maria Josefa de la Vega, widow of Juan Lazarino. By the patent, the land was granted to Maria Josefa de la Vega, widow of Juan Lazarino, and the State relinquishes to the said Maria Josefa de la Vega and her heirs or assigns forever, all the right, title, &c.  In November, 1838, Maria Josefa de la Vega sold to Charles Chevallier, the original defendant in this suit, his heirs and assigns, " the tract, lot or parcel of land, being the league and labor of land to which she was entitled as a citizen of Texas and head of a family, and for which a certificate, No. 600, has been issued by the Board of Land Commissioners," &c.  The certificate was located in Cass county, and the defendant in error, Wm. H. Beavers, having purchased the supposed interests of two of the children of Juan Lazarino, deceased, brought this suit against Charles Chevallier and others to effect a partition.  The defendant Chevallier demurred to the petition, and claimed the whole of the land by virtue of his purchase from Maria Josefa de la Vega in 1838, and pleaded in reconvention that the plaintiff had entered and trespassed upon the land, and he prayed judgment for damages, rents and profits, and for possession, &c.  The defendant Charles Chevallier having

departed this life, his administrator, Hayden H. Edwards, was made defendant. The demurrer was overruled. The jury found for the plaintiff. Partition was decreed; commissioners appointed; and their report confirmed. The defendant Edwards, administrator of Chevallier, sued out a writ of error.

The main question in the case is this: Was the grant issued to Maria Josefa de la Vega as in fact or virtually representing the estate or succession of her husband Juan Lazarino, deceased? or was it issued to her in her personal right, as the head of a family at the Declaration of Independence? The provisions of the Constitution of the Republic of Texas, and of the laws applicable to the subject, are as follows: All persons (Africans, the descendants of Africans, and Indians excepted,) who were residing in Texas on the day of the Declaration of Independence, shall be considered citizens of the Republic, and enntitled to all the privileges of such. All citizens now living in Texas, who have not received their portion of land in like manner as colonists, shall be entitled to their land in the following proportion and manner: Every head of a family shall be entitled to one league and labor of land; and every single man of the age of seventeen and upwards, shall be entitled to the third part of one league of land." Citizens who had theretofore received a league or a quarter of a league, might receive an addition sufficient to make the quantity equal to one league and labor, or to one third of a league. " Orphan children whose parents were entitled to land under the colonization laws of Mexico, and who now reside in the Republic, shall be entitled to all the rights of which their parents were possessed at the time of their death. (General Provisions, Sec. 10, Constitution of the Republic; Hart. Dig. p. 38,)

By the 12th Section of the Land Law of the 14th December, 1837, (Hart. Dig. Art. 1848,) it is declared, in effect, as follows: That every person who shall have claim to land by virtue of the colonization laws, or by residence in the country

at the Declaration of Independence, should swear that he was a resident of Texas at the date of the Declaration of Inde pendence, that he did not leave the country during the campaign of the Spring of 1836, to avoid a participation in the struggle, that he did not refuse to participate in the war, that he did not aid or assist the enemy, &c., and in the words of the oath, "that I have not previously received a title to my quantum of land, and that I conceive myself justly entitled, under the Constitution and Laws, to the quantity of land for which I now apply." Applicants were also required to prove that they were actually citizens of Texas at the date of the Declaration of Independence, and had continued so to the time of the application; and also whether they were married or single at the time of the Declaration of Independence, and what amount of land they were entitled to under the laws : Provided widows and orphans should not be required to take the oath·; and all persons claiming a grant to land of this government by inheritance or by purchase, should prove in the same manner, widows, orphans, or their legal representatives not excepted, that the person whose estate they claimed was entitled to a grant of land from the Government, by the laws of the country, &c.

That a woman who was the head of a family, was entitled under the Colonization Laws of Coahuila and Texas, and under the Constitution of the Republic, to the grant of a league or of a league and labor of land, is a proposition not to be questioned. In the case on hand, for instance, the husband Juan Lazarino died without obtaining a grant, in the summer of 1835. There can be no doubt that under the laws of colonization, his surviving widow, as the head of the family, might have applied for, and would have had the legal capacity to receive, in her personal character, the grant of land ; and that the children, as the heirs of the deceased husband, could not have legally claimed a proportion of the grant as community property. But had she applied as the representative of her

deceased husband, it is very possible that the officers of that day might have issued the title in her representative capacity; and if so, such title could not be questioned as void, nor could the widow or persons claiming under her, have impeached the right of the heirs to a share of the estate. But no grant in either capacity was issued to her prior to the Revolution, and we are now to consider the rights of the parties under the cei tificate as issued to her in 1838.

The grantee, Maria Josefa de la Vega, was a widow with four children at the Declaration of Independence. Clearly then, she had a family and she was the head of that family. She resided in Nacogdoches and continued to reside there until the date of the certificate. Here was a combination of the elements necessary to vest in her a complete right. The Constitution declares, in effect, that every head of a family who resided in Texas at the date of the Declaration of Independence, should receive a grant for a league and labor of land. Here was residence, a family with a head, and that head was the grantee. Nor was there any evidence of such unpatriotic or treasonable conduct as would incur a forfeiture. The issue of the grant precludes, in fact, such inquiry. There was no ground then on which to impeach her right to the grant. and she combining within herself the qualifications required by the Constitution, together with that imposed by the law, of continuous residence to the time of the application, her right to the grant in her personal character, as the head of the family, cannot be gainsaid.

Her right to the grant in her separate capacity being clear, does the addition to her name of "widow of Juan Lazarino," in the patent, show that she received it as the representative of the estate of her deceased husband, so as to give his heirs a right to a portion of the land? In considering the effect of this addition, it will be important to remember that there are two classes of cases in which widows may receive grants of land; one in which the grant is made to her, not because she

is the widow of the deceased, and as representing in fact or
substance his estate, but because she is the independent head
of a family ; and the other in which, if she receive a grant at
all as widow, it must be as the representative of the succession
of her husband, the succession embracing not only his separ-
ate estate, but the aggregate of the community property includ-
ing as well the wife's moiety as that of the heirs. For instance,
the grantee in this case, as head of a family at the Declaration
of Independence, was entitled to the grant in her own right.
But if the husband had been alive at the Declaration of Inde-
pendence, he would have been entitled to the grant; and had
he died before the application for the certificate, it must, if
issued to the widow at all, have issued to her as representing
the estate of the deceased, and would have enured not exclu-
sively to her own, but also to the benefit of the heirs of the
decased.   In the former case, where the widow is entitled
in her independent right, when the fact that she is a widow is
but a mere incident in the proof of the main fact that she is
the head of a family, and where having proved that she had
children, she would, in support of her character, prove also
that she had been once married and was now a widow ; in
cases of this character, where the widowhood is but an inci-
dent developed in the proof of the main fact, the addition of
the term "widow," or "widow of such an one," must be re-
garded as words of personal description, mere surplusage,
and not affecting the right of property in the certificate.

But in the other case, where the grant should be to the rep-
resentative of the husband, if it be issued to the person who
had been the wife, the addition of widow would have the
effect of showing that it was received by her as being his
widow ; and of consequence, that she was holding in a trust
and representative right.   She would have no legal capacity
to take the grant in her personal right.   She must take as a
representative ; and the addition of the word widow, if it be
allowed under any circumstances whatever to have any force

or effect, must, in this condition of the rights of the parties in interest, have the effect of indicating her trust capacity, and that she holds in that character.

But in the case before us, in which the wife had clearly an independent right in her own capacity, to receive the grant, the addition of " widow of Juan Lazarino," must be rejected as words of mere description of the person, and as in no degree affecting her complete and personal right to the property.

There may be cases in which the widow, who was the head of a family at the Declaration of Independence, applied as the representative of the deceased husband, and the certificate may have issued to her as the widow merely of the deceased, and as intending to represent his estate, and not claiming as independent head of a family. If there be such grants, the fact of relinquishment by the grantee, of her right to an independent grant as head of a family, must be established by most decisive proof. Neither the addition of the word widow, or widow of the deceased husband, or any fact which appears in this cause, would have the slightest effect in showing such a renunciation of right, or that the grantee intended to take the half, when she was entitled to the whole of a league and labor.

The certificate was sold within five or six months after its issue, by the grantee, not as widow of any one deceased, but as a citizen of Texas and "head of a family." The fact of her widowhood is no where mentioned in the deed ; but in her acknowledgment before the Notary, he declares that there personally appeared before him Maria Josefa de la Vega, (now widow of Lazarino,) &c., &c. It cannot be contended that she made the acknowledgment as widow of Lazarino, but the words of description, inserted by the Notary, are as effective to show that she did make it in the capacity of widow, as the addition in the grant is to show that it was issued to her in that capacity, and as making her virtually a representative of the husband. In neither the one nor the other do the words

Vol. XIX. 33

have any force, or any other meaning except to show that this person was the widow of Lazarino, and not some other Maria Josefa de la Vega, who may perhaps have lived in the vicinity.    It is not deemed expedient to attempt a statement of the various modes in which certificates may have been issued under facts similar to those which existed in this case, prior to the issue of the grant.    We have not access at this place, to any of' the reports or documents from the Land Office, with reference to the issue of titles.    It is believed, however, that in many cases of this description, where the husband died before the Revolution, the widow did not apply in her separate right for a grant, but the certificate was issued either to the administrator or heirs of the deceased husband.  In such cases, the widow may be regarded as having renounced her right to a personal grant as head of a family, and could claim but a moiety of what may remain after the payment of the debts of the communty.

As the grantee had the complete right in the certificate, the defendant, as purchaser under her, has the entire and absolute right in the land.    There was error throughout the proceedings of the District Court, and it is ordered, adjudged and decreed, that the judgment be in all things reversed and set aside, and that the cause be remanded to the District Court, with instruction to sustain the demurrer to the petition as amended, and that the defendant may proceed, if he be so advised, in his cross action against the plaintiff Wm. H. Beavers for possession and damages.

                              Reversed and remanded.