J. M. BALDWIN ET AL. v. J. C. ROBERTS ET AL.

Delivered May 30, 1896.

1. **Evidence—Secondary Proof of Patent—Certified Copy.**

Where the record of the General Land Office of a land patent was put in evidence, but contained interlineations and erasures which rendered it doubtful as to what person the patent originally issued, and it was shown that the original patent could not be procured, a certified copy of such patent from the records of the county in which the land was situate was properly admitted; as was also the testimony of witnesses to the effect that the original patent was issued to defendant's ancestor and contained no interlineations or erasures, such testimony being merely cumulative of the contents of such certified copy, and not objectionable as varying the land office records.

2. **Trespass to Try Title—Unrecommended Land Certificate.**

In an action of trespass to try title, a mere unrecommended land certificate, issued to plaintiff's ancestor, is insufficient to support the action, in the absence of a showing of the legal title to the land.

3. **Same—Proof of Proceedings in Another Action.**

Where plaintiffs in trespass to try title claimed under an unrecommended land certificate, and defendants claimed under an alleged transfer of such certificate to their predecessor in title (of which transfer their proof was not legally admissible), and a subsequent patent from the State, the record of proceedings in a suit against the State begun by defendants' predecessor in title, reciting such alleged transfer and resulting in a judgment ordering a patent to issue in such predecessor's name, was admissible as part of the history of the title, and also to show that the

patent was actually so issued, and the manner of its issuance, and, in connection with other facts, to show open and notorious claim to the land on the part of defendants.

**4. Same—Land Certificate—Presumption of Transfer.**
Where defendants claimed under an alleged transfer of a land certificate, their proof of which transfer was not legally admissible, and it was shown that they and their grantors had made open, notorious and continuous claim of title to the land for nearly fifty years from and after the date of such alleged transfer, and had paid all taxes on the property, and that during such time plaintiffs had made no claim of title, a transfer of such certificate will be presumed.

**5. Land Certificate—Transfer by Husband—Presumption as to Community Property.**
Where a headright certificate which was community property was transferred by the husband after the death of the wife, it will be presumed, after the lapse of nearly fifty years, that such transfer was made to pay community debts.

**6. Practice—Admission of Evidence—Harmless Error.**
Error of the court in admitting in evidence a certified copy of a transfer of a land certificate to defendants' grantor from the records of a county in which the land was not situated, is harmless, where there was already sufficient evidence in the case to establish, by presumption, the existence of such transfer.

**7. Same.**
The exclusion of evidence which should have been admitted is harmless error, where, if admitted, it would not probably have affected the result.

APPEAL from Haskell.　Tried below before Hon. ED. J. HAMNER.

*Baldwin & Lomax*, for appellants.—1.　The court erred in admitting in evidence the certified copies of the petition and the judgment rendered in the District Court of Bexar County, Texas, in the case of Hugh M. Cunningham, administrator of the estate of John R. Cunningham, v. The Republic of Texas, because said petition and judgment could prove no fact against the plaintiffs, and the only question that could have been tried by the court was whether or not said certificate was a genuine claim against the government, and the question of title to the certficate could not have been passed on by the court.　Gilbert v. Odum, 69 Texas, 673; Madring v. McBride, 62 Texas, 312; Herndon v. Davenport, 75 Texas, 462; Freeman v. Hawkins, 77 Texas, 499; McDow v. Rabb, 56 Texas, 159; Masterson v. Jordan, 24 S. W. Rep., 549; Whart., Ev., 1156, 210.

2.　The only purpose for which a suit of this kind could be brought was to establish the genuineness of the certificate or claim for land against the Republic, or, in other words, to ascertain whether or not the party mentioned in said certificate was in fact and in truth entitled to a certificate for the amount of land mentioned or called for therein under the Constitution and laws of the Republic, and to show that there had been no fraud perpetrated in the previous procuring of said certificate, and that it was fairly and honestly procured from the Land Board of Bexar County, whose act it purported to be.　And after the location of the certificate and patent issues thereon, these facts are conclusively presumed, and said petition and judgment become irrelevant and immaterial and inadmissible for any purpose.　Paschal's Digest, arts. 4226,

4230, 4235, 4286, 4289, 4290, 4291, 4292, 4294; Constitution of Texas (1845), art. 11, sec. 1; 2 Pas. Dig., p. 71; Sayles' Early Laws, art. 740, secs. 1, 6, 7, 8; art. 998, secs. 1 to 12; arts. 1869, 1489; Sayles' Statutes, arts. 3953, 3959, 3960; Macdonnell v. De Los Fuentes, 26 S. W. Rep., 795; Deen v. Wills, 21 Texas, 649–650; Miller v. Brownson, 50 Texas, 593; Todd v. Fisher, 26 Texas, 242.

3. As neither the plaintiffs nor their privies were parties to that suit, the petition and judgment would not be admissible against them to prove any fact; they could not be bound thereby. Macdonnell v. De Los Fuentes, 26 S. W. Rep., 795, 797, 798.

4. The court erred in admitting in evidence the certified copy from the deed records of Haskell County of the original patent or what purported to be a certified copy thereof, because the original, or certified copy of said original from the general land office is the best evidence of the contents of said patent. Vandergriff v. Piercy, 59 Texas, 371; Hooper v. Hall, 30 Texas, 160; Crayton v. Munger, 11 Texas, 234; Bray v. Aikin, 60 Texas, 690; Ney v. Mumme, 66 Texas, 268; Bass v. Mitchell, 22 Texas, 285.

5. The certificate by virtue of which the land was located having issued to Isidro Ramos on 12th day of July, 1838, for a league and labor of land upon his appearing before the board of land commissioners of Bexar County and proving according to law, "that he is a native citizen of Texas, a married man, and entitled to a league and labor of land," and these facts being recited in the certificate, it thereby passed the title to the certificate to him as a "married man," and it became the community property of himself and wife, and the purchaser of the whole from him took the same subject to the rights of the heirs of the deceased wife. Constitution, Republic of Texas, sec. 10 (b); 1 Sayles' Early Laws, 206; Hill v. Moore, 85 Texas, 342; Hulsey v. Boone, 71 Texas, 185; Hodge v. Donald, 55 Texas, 348; Porter v. Chronister, 58 Texas, 53; Carter v. Wise, 39 Texas, 275; Cannon v. Murphy, 31 Texas, 406; Wilkinson v. Wilkinson, 20 Texas, 242; Yates v. Houston, 3 Texas, 433; Parker v. Chance, 11 Texas, 513; Burris v. Wideman, 6 Texas, 231; Rudd v. Johnson, 60 Texas, 93; Norton v. Cantagrel, 60 Texas, 539; Marks v. Hill, 46 Texas, 346; Fishback v. Young, 19 Texas, 406; Johnson v. Newton, 43 Texas, 639; Manchaca v. Field, 62 Texas, 139; Veramendi v. Hutchins, 48 Texas, 551.

6. If the certificate could have been sold by Ramos for the payment of community debts, the burden of proving the existence of community debts, and the authority to sell, is on the one who holds or claims title under the survivor. Johnson v. Harrison, 48 Texas, 275; Yancy v. Batte, 48 Texas, 46; Duncan v. Rawls, 16 Texas, 478; Thompson v. Cragg, 24 Texas, 582; Mitchell v. Marr, 26 Texas, 329; McGee v. Rice, 37 Texas, 500.

*Farrar, Williams & Farrar, A. C. Foster* and *Sayles & Sayles,* for appellees.—1. The certified copies of the petition and the judgment in

the District Court of Bexar County, Texas, in the case of Hugh M. Cunningham, administrator of John R. Cunningham, v. The Republic of Texas, were properly admitted in evidence in this case, because the judgment is a judgment in rem and not subject to a collateral attack, except by showing a want of jurisdiction in the court rendering the judgment. Arts. 4211-4214, 4226-4236, 4288a-4292, Pasch. Dig. of Laws; Pitts v. Booth, 15 Texas, 455; Walter's Heirs v. Jewett, 28 Texas, 192; Merriweather v. Kennard, 41 Texas, 273; Capp v. Terry, 75 Texas, 391; Burkett v. Scarborough, 59 Texas, 495; Martin v. Robinson, 67 Texas, 368; McCamant v. Roberts, 66 Texas, 260; Freeman on Judgments, sec. 606; 2 Black on Judgments, sec. 792.

2. After a proper predicate has been laid for the introduction of a copy from the records of Haskell County, that copy is as admissible and entitled to as much consideration as the original patent itself, or a land office copy thereof. 1 Greenl. Ev., sec. 560.

3. If Juana Balvina Ramos, dying in 1833, had notwithstanding a community interest in a certificate issuing July 12, 1838, upon a sale by her husband, I. Ramos, of said certificate on July 13, 1838, it would be presumed after the lapse of fifty-seven years that there were community debts authorizing the sale, and that the sale was legal. Manchaca v. Fields, 62 Texas, 135; Veramendi v. Hutchins, 48 Texas, 552, and the authorities referred to in these two cases. ·

4. If said transfer and the judgment and the petition were not under the facts of this case admissible as evidence of title in those claiming the certificate, yet they were admissible to show a claim of ownership in those holding and claiming it by virtue of said transfer and judgment. 1 Greenl. Ev., sec. 34.

TARLTON, Chief Justice.—June 2, 1893, the appellants, as plaintiffs, consisting of numerous persons of Mexican name, as heirs of Isidro Ramos and his wife Juana Balbino Ramos, joined by J. M. Baldwin as a privy in estate, brought this suit of trespass to try title to recover from the appellees, as defendants, the Isidro Ramos league and labor survey lying in Haskell County, Texas. The defendants prevailed in the lower court, and hence this appeal.

We find the following conclusions of fact:

1. In 1830 Isidro Ramos and his wife Juana Balbino Ramos, with their family of four children, lived in Bexar County.

2. In 1832 they moved to Nava, Mexico, where on June 23, 1833, Juana Balbino Ramos died, and where on October 12, 1833, Pedro Ramos, a son, died, and where on October 14, 1833, Pedro Jose Ramos, another son, died. The remaining children, consisting of two daughters, Juana Ramos and Gregoria Ramos, continued to reside in Mexico, never returning to Texas.

3. Isidro Ramos, the husband, returned to Bexar County prior to March 2, 1836 (the date of the declaration of independence) and resided there until about 1841, when he died. He was married but once.

4. Plaintiffs are the heirs and vendees of the heirs of Isidro Ramos and his wife Juana Balbino Ramos.

5. July 12, 1838, the board of land commissioners of Bexar County issued to Isidro Ramos certificate No. 605, reciting that the grantee appeared and "proved according to law that he is a native citizen of Texas, a married man, and entitled to one league and labor of land, upon condition of paying at the rate of $3.50 for every labor of irrigable land, $2.50 for every labor of temporal or arable land, and $1.20 for every labor of pasture land, which may be contained in the survey secured to him by this certificate." This certificate was not recommended by the traveling board of land commissioners.

Under an act of February 4, 1841, Paschal's Digest, art. 4226, and an act supplementary thereto of June 27, 1845, Paschal's Digest, art. 4228, H. M. Cunningham, as administrator of John R. Cunningham, in January, 1846, filed his petition in the District Court of Bexar County, Texas, reciting the following facts, substantially: That on August 13, 1838, Rafael Garza sold and conveyed to John R. Cunningham, now deceased, a land certificate for one league and labor of land which was granted by the board of land commissioners of Bexar County to Isidro Ramos on July 12, 1838, as his own headright claim, and which by Isidro Ramos had been conveyed to said Rafael Garza on July 13, 1838; that the traveling board of land commissioners did not recommend said certificate for patent; that Isidro Ramos was a resident citizen of Texas previous to and at the date of the declaration of independence; that he was a married man and the head of a family, and had never received any other grants of land from the Republic or from any other government; that petitioner by virtue of the aforesaid transfers is entitled to receive, as administrator, a certificate for said league and labor of land for the benefit of the estate of John R. Cunningham; that Cunningham was taken a prisoner by the public enemy in 1842. The petition prayed for a decree that a certificate for a league and labor of land be granted and issued to him as administrator, according to the statutes.

Upon a trial of the issues presented by this petition, had in accordance with the terms of the statute, the District Court of Bexar County, on November 18, 1846, rendered judgment on a verdict of a jury therein returned, decreeing that the plaintiff, as administrator of John R. Cunningham "recover of the State of Texas one league and one labor of land as the assignee of Isidro Ramos, for the use and benefit of the estate of intestate John R. Cunningham, deceased, and that the clerk issue a certificate for the same according to the statute in such cases made and provided." A certified copy of this decree was filed in the General Land Office on June 19, 1856.

6. The administrator of John R. Cunningham, and those claiming in privity with him, have since the date of this decree openly and notoriously claimed the ownership of the certificate and the title dependent thereon. They caused the land to be located through one I. G. Searcy, and the field notes to be returned to the General Land Office, together

with the certificate No 605, in 1855; and while the survey was made in the name of Isidro Ramos, it cannot be questioned that it was made for and at the instance of the claimant of the Cunningham title.

7.  In accordance with this claim and in recognition thereof, the State on April 29, 1870, issued its patent to the land in controversy in the name of the "heirs of John R. Cunningham, their heirs or assigns," containing no reference to Isidro Ramos or his heirs, save that the land was located by virtue of the certificate issued to him.  All patent fees and government dues were paid by those under whom the defendants claim.

8.  The defendants' chain of title from John R. Cunningham is as follows:  1. The will of John R. Cunningham, probated in 1843, by which he bequeathed to Hugh M. Cunningham, his brother and heir at law, the certificate in question, under the general devise of all the testator's property, real and personal, in Texas.  2. The will of Hugh M. Cunningham, probated in 1847, by which he devised the property in question to his brother Andrew Cunningham, recognizing the latter as his "sole and entire heir," and appointing him his executor.  3. A deed dated January 2, 1879, from Andrew Cunningham to I. G. Searcy, conveying the land in suit, in consideration of the services of Searcy in locating and patenting the Isidro Ramos survey and other lands.  4. A general warranty deed, dated August 1, 1884, to the land in controversy, from I. G. Searcy to R. A. Brown and John C. Roberts, in consideration of $9710 cash.  5. A general warranty deed, dated June 1, 1889, from R. A. Brown and John C. Roberts to Joseph D. Roberts, conveying 300 acres of the land in controversy.  These several instruments were all properly recorded.

9.  The defendants have paid a full and valuable consideration for the land, without notice of any claim of plaintiffs, or of any adverse claimant except such as is given in the patent.  They have continuously paid the taxes on the land.  The plaintiffs, on the other hand, have never paid any taxes on the land, nor asserted any character of title thereto until the filing of this suit.

10.  The original patent was delivered to A. B. McGill for the claimants of the Cunningham title.  It was by him sent to I. G. Searcy, who then claimed the land.  It was by Searcy delivered to Brown and Roberts when they purchased.  It was by Brown and Roberts delivered to R. C. Lomax, a member of the firm of Baldwin, Lomax & Jones. It was seen in 1892, a few months before the institution of this suit, in the possession of J. C. Baldwin, a member of the above firm and an attorney for the plaintiffs.  He failed to produce it on demand.

11.  The defendants in 1885 divided about 160 acres of the land into blocks and lots, located a town thereon, and sold a number of the lots. In 1888 they took actual possession of 300 acres more of the land, enclosed it, and built a house thereon, which they have used, occupied and enjoyed ever since.  In 1889 they took actual possession of 200

acres more, erected valuable improvements thereon, enclosing it and since continuously occupying it.

*Opinion.*—We dispose of the questions deemed by us to be material rather in their logical order than in the order of their presentation in the appellants' brief.

1. We have found with the trial court, contrary to the contention of the appellants, that the original patent issued by the State to the land in controversy was in the name of the heirs of John R. Cunningham, as patentee, instead of Isidro Ramos. Assignments of error challenge the correctness of the court's action in admitting evidence upon the issue whether the name of the patentee was as found by the court or as contended by the appellants. We dispose of these assignments as follows:

The court did not err in admitting in evidence over the objection of the plaintiffs a certified copy from the records of Haskell County of the original patent filed for record on July 17, 1884. This action of the court was preceded or accompanied by evidence as follows:

A certified copy from the General Land Office of the patent as there recorded was introduced. From this record it appears that the patent was issued to the heirs of John R. Cunningham, their heirs or assigns; but this record, as well as the order directing the issuance of the patent, has the appearance of having been changed. On the file wrapper the order appears to have been originally in these words: "Patent to Isidro Ramos April 27, 1870. Jacob Keuchler." An alteration in the order was made by erasing the name "Isidro Ramos" and inserting the name "heirs of John R. Cunningham." The endorsement on the file wrapper made by the patenting clerk was originally in these words: "Patented to Isidro Ramos April 29, 1870. Louis Maas." An alteration in this endorsement was made by erasing the name "Isidro Ramos" and by substituting the name "the heirs of John R. Cunningham." In the record of the patent the words "Isidro Ramos" are not erased, but they are enclosed in parentheses in black ink, and the words "heirs of John R. Cunningham" are written in blue ink following the name "Isidro Ramos." The word "his" is also enclosed in parentheses, and the word "their" written in blue ink after and above it. Similar alterations were made in the record after the description of the land.

The testimony of the Commissioner of the Land Office, and of the witness McGill, skilled in the operations of the Land Office, tended to show that the patent was in the first instance by mistake written to Isidro Ramos as the patentee, instead of to the heirs of John R. Cunningham; that as thus written it was entered upon the records of the General Land Office; that upon discovery of the mistake the original draft of the patent, prepared but never issued or delivered, was destroyed, and a corrected draft made showing the patent to be to the heirs of John R. Cunningham; and that the interlineations and substitutions above indicated were made by the proper officers in the Land

Office to correspond with the patent as actually issued. Was this theory correct?

The original patent would best solve the question and elucidate the very material issue of fact, in whose name was the patent issued, or in other words, in whom did the State place the legal title to the land in controversy? As we have seen, the defendants deraign title through the devisees or heirs of John R. Cunningham, and as the representative of their claim I. G. Searcy caused the land to be located in 1855. To him the original patent was delivered from the Land Office in 1870. He retained it in his possession until he sold the land to Brown and Roberts, the appellees, about August, 1884, when he delivered it to them. From them it passed into the possession of the law firm of Baldwin, Lomax & Jones, who at the time represented Brown and Roberts in some litigation concerning the Ramos survey. A few months before the institution of this suit it was seen by Jones in the possession of J. C. Baldwin, of the firm of Baldwin & Lomax, who represent the appellants in this case. Baldwin stated that he had not seen the patent since it was filed with the papers in the suit of Thompson v. Roberts (presumably the suit in which he represented the parties who are appellees in this case.) It was shown that Foster, an attorney representing the appellees in this suit, and others, made diligent and fruitless search for the patent among the papers of Thompson v. Roberts. Notice was given to J. C. Baldwin, in whose possession it was last seen by any other person than himself, and he failed to produce it.

As a certified copy from the records of the General Land Office was already in evidence, and as it was questionable whether this was, on account of the interlineations and erasures above described, a true copy of the original, and as the original could not be produced after due notice to the person chargeable with its possession, we are of opinion that a proper predicate had been laid for the introduction of secondary evidence. Jackson v. Deslonde, 1 U. C., 681, and authorities there cited. Besides, it was shown by the witness Jones that he had compared the original patent with the record of the patent, and that the recorded copy in evidence is a true copy of the original.

The fact that the court permitted the witnesses Searcy, McGill, Roberts and Jones to testify that the original patent was issued to the heirs of John R. Cunningham, and that it had no alterations, interlineations or erasures in it, furnishes no ground for serious complaint. This testimony was purely cumulative of the contents of the certified copy from the records of Haskell County, which we have held was, under the circumstances, properly introducible. So, this evidence did not tend to vary or contradict the Land Office record, but rather to explain the ambiguities existing in it.

2. Having found that the legal title to the land in controversy was vested by the State in the heirs of John R. Cunningham, and hence in their privies, the defendants in this suit, the question arises, have the plaintiffs made out even a prima facie case? In the absence of a patent

in the name of Isidro Ramos, the sole muniment of title on which they rest their claim, in the light of this record, is the unrecommended land certificate issued July 12, 1838.

3. The proceedings instituted in the District Court of Bexar County and the decree dependent thereon were read in evidence over the objection of the appellants. It is difficult to see how they could urge the inadmissibility of these proceedings and this decree. From them the certificate and the title to the land in controversy took their life. Without them the certificate, unrecommended as it was, and the title which they claim, would have fallen stillborn. Without them the plaintiffs would have had not even a pretext for this litigation. We think that they were admissible at least as a part of the history of this title, and as showing the open, notorious and continuous claim on the part of the defendants and their privies, and as tending also to show the fact that the patent actually issued to the heirs of John R. Cunningham and how it came thus to be issued by the State.

If the plaintiffs shall be permitted to invoke the proceedings by Cunningham in 1846 as sufficient to stamp the certificate with the seal of genuineness inuring to their benefit, we are yet of opinion that, as the legal title has been vested by the State in their adversaries, the appellants present no such case, under the facts justified by this record and found by us, as will entitle them to relief. We have found that from 1846 until the institution of this suit in 1893, the defendants and those under whom they hold have asserted the open, notorious and continuous ownership of the title in controversy; that they have paid all taxes upon the property, and that in the meantime the plaintiffs have been wholly passive and silent with reference to any claim to the property. Under these circumstances, we think it but fair to presume that Isidro Ramos transferred the certificate in question to John R. Cunningham. The cases are not rare wherein it has been held, that after a great lapse of time a transfer or a conveyance will be presumed in favor of one asserting during all that time open and notorious claim of ownership against the supposed grantor. Especially is this true where, as in the case of the transfer of a land certificate, no written muniment is required. Newby v. Haltaman, 43 Texas, 317; Ikard v. Thompson, 81 Texas, 292; Parker v. Spencer, 61 Texas, 155; Manchaca v. Field, 62 Texas, 141; Capps v. Terry, 75 Texas, 401.

4. In our view of this case, we find it unnecessary to determine whether the certificate issued to Ramos in 1838 should be regarded as his separate property at the time of its issuance, or the community property of himself and his wife. As it appears to be undisputed that the certificate issued under section 10 of the general provisions of the Constitution of the Republic, cogent reasons are advanced that it should be regarded as the separate property of the husband. Edwards v. Beavers, 19 Texas, 506; Fishback v. Young, 19 Texas, 515.

But if we consider it as the community property, in which as heirs of the wife the appellants would have had an inheritable interest, we never-

theless think that, as the presumption should under the facts of this case obtain that the husband, Ramos, transferred the certificate to John R. Cunningham, a further inference should be indulged, after the great lapse of time during which the transfer has remained unchallenged, that it was executed for the purpose of paying community debts, or for other community considerations. Veramendi v. Hutchins, 48 Texas, 552; Manchaca v. Field, 62 Texas, 135, and authorities there cited.

· 5. The court, over the objection of the plaintiffs, admitted in evidence, (1) a certified copy from the deed records of Bexar County of an instrument dated July 13, 1838, purporting to be a transfer from Isidro Ramos to Rafael Garza of certificate No. 605, filed for record in Bexar County July 13, 1838; (2) a similar certified copy of an instrument dated August 13, 1838, purporting to be a transfer from Rafael Garza to John R. Cunningham of said certificate, also filed in Bexar County October 16, 1838. Neither of these instruments had ever been recorded in Haskell County. Under the authority of Simpson v. Chapman, 45 Texas, 560, and Shifflet v. Morelle, 68 Texas, 389, the correctness of which we do not question, this action of the court was erroneous; but for reasons already indicated it is held by us to have been harmless and immaterial.

6. The court excluded, over the objection of the appellants, a certified copy from the General Land Office of an exhibit or extract from that office tending to show, among other things, that the land involved in this suit was patented to Isidro Ramos. If this exhibit or extract was admissible as a record of the Land Office under art. 2253, Sayles' Revised Statutes, we are yet of opinion that its exclusion was not detrimental to the plaintiffs; and this because, if it had been admitted, it would not have been reasonably sufficient to justify a conclusion other than that found by the court and by us, viz: that the patent in this instance was issued, not to Isidro Ramos, but to the heirs of John R. Cunningham.

These views, we think, sufficiently dispose of the questions presented in the appellants' brief, and require an affirmance of the judgment; which is ordered.

*Affirmed.*

Writ of error refused.