STEDDUM v. KIRBY LUMBER CO. et al.

(Court of Civil Appeals of Texas. Galveston. Nov. 13, 1912. On Motion for Rehearing, Jan. 30, 1913.)

1. APPEAL AND ERROR (§ 854*)—REVIEW—THEORY AND GROUNDS OF DECISION.

Where a verdict for defendant was properly directed, the judgment will not be reversed, although the reason assigned by the trial court for such direction was unsound.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3403, 3404, 3408–3430; Dec. Dig. § 854.*]

2. TRESPASS TO TRY TITLE (§ 44*)—EVIDENCE—SUFFICIENCY.

In trespass to try title to an undivided one-half interest in land, plaintiff did not challenge defendants' title to the other one-half, nor show that they were trespassers. Plaintiff claimed that the land was community property of his father and his father's first wife; that the wife, upon a divorce for adultery, forfeited her interest to her children; and that he inherited from such children as their half-brother. He did not show that the wife did not remarry and have other children. *Held,* that a verdict for defendant was properly directed, since, by plaintiff's failure to show that his half-brothers did not have other heirs, he failed to show himself entitled to an undivided one-half interest or to any definite interest less than that claimed.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 66; Dec. Dig. § 44.*]

3. TRESPASS TO TRY TITLE (§ 41*)—EVIDENCE—SUFFICIENCY.

A plaintiff, claiming title and possession of property, must remove every possibility of title in another, and not only show affirmatively his relationship to the person under whom he claims, but also that no other heirs exist to impede the descent, and, to do this, must negative the coming into existence of such other heirs.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 62, 63; Dec. Dig. § 41.*]

4. EVIDENCE (§ 67*) — PRESUMPTIONS — CONTINUANCE OF STATUS OR CONDITION.

In trespass to try title, where plaintiff claimed as heir of his half-brothers, and showed that their mother was divorced, it could not be presumed, in the absence of evidence to the contrary, that her status continued, and that

she did not remarry and have other children, especially where a witness for plaintiff testified that she knew the wife from the time of the divorce to her death, but was not asked whether she remarried.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 87, 88, 103; Dec. Dig. § 67.*]

5. PUBLIC LANDS (§ 178*)—HEADRIGHT CERTIFICATES—ASSIGNMENTS.

If an assignment of a headright certificate to an assignee, who obtained a patent in 1852, was prior to the holder's divorce from his wife, the title to the whole land passed to the assignee, and third persons could acquire no title under the wife.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 579–582; Dec. Dig. § 178.*]

On Motion for Rehearing.

6. PUBLIC LANDS (§ 178*)—HEADRIGHT CERTIFICATES—ASSIGNMENTS.

A recital, in a duplicate headright certificate, that the original certificate had been lost, as shown by the oath of the certificate holder, was sufficient, in the absence of evidence to the contrary, to sustain a finding that the certificate had not been assigned previous to that time.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 579–582; Dec. Dig. § 178.*]

Appeal from District Court, San Augustine County; W. B. Powell, Judge.

Action by N. B. Steddum against the Kirby Lumber Company and another. From a judgment for defendants, plaintiff appeals. Affirmed.

W. J. Townsend, of Lufkin, Foster & Davis, of San Augustine, H. B. Short, of Center, G. P. Dougherty, of Beaumont, and Wm. McDonald, Rufus Price, and E. A. Davis, all of San Augustine, for appellant. Hightower, Orgain & Butler, of Beaumont, and Andrews, Ball & Streetman, of Houston, for appellees.

PLEASANTS, C. J. This is an action of trespass to try title and for partition, brought by the appellant against the Kirby Lumber Company and the Houston Oil Company. Plaintiff's petition, which is in the usual form in actions of trespass to try title, seeks to recover against appellees the title and possession of an undivided one-half of a tract of 3,153 acres of land in San Augustine county, known as the Samuel Steddum survey, and also contains the following prayer: "And in the event it is shown, and the court so holds, that the defendants are entitled to the other undivided one-half of said tract of land not herein sued for, then plaintiff prays for partition between plaintiff and said defendants of the property in controversy." The defendants disclaimed as to all of the land in controversy, except certain portions thereof described in their answer, as to which they pleaded a general demurrer, plea of not guilty, pleas of limitation of three, five, and ten years, and plea of stale demand. Upon the trial of the case, after plaintiff had introduced his evidence and rested his case, the court, on motion of defendants, instructed the jury to return a verdict in their favor; and, upon return of such verdict, judgment was rendered that plaintiff take nothing, and that defendants recover of plaintiff the portions of the land in controversy claimed by them.

The evidence introduced by plaintiff, and upon which the court instructed the jury to find a verdict in favor of the defendants, is as follows:

"(1) A duly certified copy from the General Land Office of a headright certificate for one league and labor of land issued by the board of land commissioners of San Augustine county on February 1, 1838, to Samuel Steddum; the certificate being numbered 229.

"(2) A duly certified copy from the General Land Office of records of the traveling land board to detect fraudulent land certificates recommending on April 27, 1840, the said certificate for one league and labor issued to Samuel Steddum on February 1, 1838.

"(3) A duly certified copy from the General Land Office of a duplicate headright certificate issued to Samuel Steddum for one league and labor of land, dated December 19, 1843, and is based on and refers to the original certificate for one league and labor, numbered 229, issued to Samuel Steddum on February 1, 1838.

"(4) A duly certified copy from the General Land Office of a duplicate unlocated balance certificate issued to Samuel Steddum on May 22, 1851, for 17,801,350 square varas of land. This certificate is based on and refers to the original headright certificate numbered 229, issued to Samuel Steddum on February 1, 1838.

"(5) A duly certified copy from the Land Office of a certificate of survey locating the said second duplicate certificate described above on the land in controversy on February 19, 1852, with field notes of the survey as returned to the Land Office.

"(6) The deposition of Mrs. Mary E. Coulter and Mrs. Martha Jane Earl. Mrs. Mary Coulter was the second wife of Samuel Steddum, the father of plaintiff, and plaintiff's mother. The testimony of these two witnesses established, or tended to establish, that Samuel Steddum and his first wife, Phœbe Steddum, were living together as husband and wife in San Augustine county on February 1, 1838, when the certificate for one league and labor of land was issued to him; that Samuel Steddum and his wife, Phœbe, had three children at the time of their divorce and separation in 1839; that these three children were boys, and that they all died without issue; that Samuel Steddum was married a second time in 1848 to Mary E. Venett, and had one child by the second marriage, to wit, a son N. B. Steddum, who is the plaintiff in this suit; that Samuel Steddum died in 1848, and his widow afterwards married Hiram W. Coulter;

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

that Phœbe Steddum, the first wife of Samuel Steddum, died in 1850; and that all of the children of the first marriage died after the deaths of their parents.

"(7) A certified copy of a decree of divorce, rendered in the district court of San Augustine county, on September 10, 1839, in the case of Samuel Steddum v. Phœbe Maria Steddum, the copy of the judgment being as follows:

"'Tuesday, Sept. 10, 1839.

"'On Petition for Divorce.

"'Samuel Steddum v. Phœbe Maria Steddum.

"'This day came the plaintiff by his attorneys, and the defendant not appearing, and the court being satisfied that there would be no defense made in this case, it was submitted to a jury of good and lawful men, to wit:

| | |
|---|---|
| 1. James W. Bullock. | 7. J. H. McKnight. |
| 2. Thomas D. Dendrick. | 8. Thomas H. Gardner. |
| 3. A. Huston. | 9. J. F. Palmer. |
| 4. Robt. H. Martin. | 10. F. P. Cabler. |
| 5. William J. Hamlett. | 11. William Loyd. |
| 6. James L. Dickey. | 12. Henry W. Sublett. |

"'Who being impaneled, charged, and sworn the truth to speak, and upon their oath do say: "We, the jury, find against the defendant the act of adultery, as set forth in the petition. A. Huston, foreman." It is therefore ordered and decreed by the court that the bonds of matrimony hitherto existing between the said Samuel and Phœbe Maria Steddum be dissolved, and that a divorce a vinculo matrimonii be granted, ordered and decreed unto the said Samuel Steddum from the said Phœbe Maria Steddum, and that the said decree is hereby rendered perpetual and forever irrevocable. And it is further ordered by the court that the plaintiff pay all costs in and about this behalf expended and execution issue,' etc."

Appellant states in his brief that the trial court granted appellees' motion to instruct a verdict in their favor on the ground that, under the law in force in Texas in 1839, a married woman, by commiting the act of adultery, forfeited to her husband her interest in their community property, and that the recitals in the divorce decree, put in evidence by plaintiff, established that Phœbe Steddum, under whom plaintiff claims, was guilty of adultery; and, her interest in the land having been thereby forfeited to her husband, plaintiff has no title. All of appellant's assignments of error assail this holding of the trial court. The authorities cited in support of the contention that the court erred in his construction of the Spanish or Mexican Codes in force in Texas in 1839 are not accessible to us, and we have reached no conclusion upon this question; its decision being unnecessary to a proper disposition of this appeal.

[1] It does not appear from the record upon what ground the trial court sustained appellees' motion to instruct the jury to return a verdict in their favor; but, if it did so appear, the judgment could not be reversed, if appellees were entitled to the instruction upon any ground disclosed by the record. If, upon the evidence disclosed by the record, the court should have instructed a verdict for the defendants, the fact that the reason assigned by him for such instruction was not sound would not authorize a reversal of the judgment.

[2] As before shown, plaintiff's petition seeks to recover an undivided one-half of the tract of land therein described. Upon this pleading, plaintiff would only be entitled to recover by a prima facie showing of title to all of the land claimed by him, or to some definite interest less than the interest claimed in his petition. Unless the evidence shows to what interest in the land plaintiff has title, the court was not authorized to render any judgment in his favor, and the jury were properly instructed to return a verdict for the defendant. Baldwin v. Goldfrank, 88 Tex. 261, 31 S. W. 1064. In the case cited, our Supreme Court says: "Our statute requires that, if the plaintiff in an action of trespass to try title sues for an undivided interest, he shall set out in his petition the amount of the interest claimed by him. Revised Statutes, art. 4786. It has been ruled that he may recover a less interest than that alleged; but he should establish his title to the interest sued for, or to some less interest definite in extent. He cannot recover by proving that he owns some undivided portion of the land, without establishing what that portion is. The judgment ought to determine the rights of the parties." It seems that the rule that, as against a naked trespass, a plaintiff, showing title to an undivided interest in land, may recover the whole of the tract is not applicable where the plaintiff only sues for an undivided interest. He cannot recover more than he sues for; and, by restricting his claim to an undivided interest, he admits that he has no right to the title or possession of the whole, and cannot evict even a trespasser from that interest in the land not claimed by him and not involved in the suit. It is also held "that, when a cotenant seeks to recover of a defendant exclusive possession of land, he should prove not only his own title to an undivided interest, but also that the defendant has no title to any interest." Davidson v. Wallingford, 88 Tex. 619, 32 S. W. 1030. There is nothing in the record to show what title defendants had or claimed in the land. The plaintiff's pleading does not challenge defendants' title to an undivided one-half of the land, and there is nothing in the evidence introduced which tends to show that defendants were naked trespassers; and under the rule above quoted, even if plaintiff had sought in his petition to recover the whole of the land, he would not be entitled to such judgment. We think the evidence introduced by plaintiff, and upon which the court in-

structed the jury to return a verdict for the defendants, fails to show what interest in the land is owned by the plaintiff.

The title under which plaintiff claims is by inheritance from his half-brothers, who were children of Phœbe Steddum and plaintiff's father, Samuel Steddum. The title of said half-brothers was derived by inheritance from their mother, Phœbe Steddum, the divorced wife of Samuel Steddum. It is clear that, in order to show that plaintiff was entitled to recover the whole of the half interest in the land owned by Phœbe Steddum, the burden was upon him to show that he was the sole heir of his said half-brothers; and in the absence of any evidence that Phœbe Steddum died without other issue than plaintiff's half-brothers, the plaintiff failed to show what definite interest in the land is owned by him. The only evidence upon this issue is as follows: Plaintiff's mother, who married Samuel Steddum in 1846, testified "that Samuel Steddum had been married prior to his marriage with her, and that his first wife's name, she thought, was Phœbe Strother, and that they had been separated; that she did not know when he married Miss Strother as that was too long before she knew him; that there were three children born to Samuel Steddum and his first wife, Phœbe Steddum, viz., James, Eugene, and Samuel, none of whom was ever married, and that they all died in California where they had gone during the 'gold fever'; that she did not know the exact places or dates, except that the oldest one died first; that she had no family Bible containing the record of any of the Steddum family."

The witness Martha Jane Earl testified that she knew Samuel Steddum and his wife, Phœbe; "that the said. Samuel and Phœbe lived 10 miles west of the town of San Augustine on his own farm, and that she lived about one mile from them; that said Samuel Steddum was married again; that Phœbe Steddum is dead, and that she died about 1851, and that she was sure it was after 1850; that Samuel Steddum was killed in 1847; that Eugene, Sam, and James Steddum were the sons of the said Samuel and Phœbe Steddum, and that she was acquainted with them; that all of said children are dead; and that they died after their parents died."

This testimony does not establish prima facie that plaintiff was the sole heir of his half-brothers. The rule is thus stated in Elliott on Evidence, vol. 3, §§ 2188 and 2189: "Where a person claims a right to the possession of certain property by reason of his being the lawful heir, under the statute of descent, from a deceased ancestor or collateral kindred, the burden of proof is upon him to establish every fact necessary to entitle him to recover under the law. Under this rule, the plaintiff must establish the fact that he is the person legally entitled to the property in dispute as such heir by proof of his relationship, and that there are no other per-

sons in equal or close degree of consanguinity who are entitled to share with him in such property (citing Anson v. Stein, 6 Iowa, 150; Skinner v. Fulton, 39 Ill. 484; Morrill v. Otis, 12 N. H. 466; Sheehan's Estate, 139 Pa. 168, 20 Atl. 1003). The rule is that the heir at law, when suing as a plaintiff in ejectment, must prove his descent from the ancestor from whom he claims, and that he must show that all the intermediate heirs are dead without issue; and that, in order to show the death of all nearer heirs, it is necessary to negative the coming into existence of those who would be such. It seems to be clear that, in the absence of proof of the nonexistence of issue as a distinct species of fact from that of death, the proof of heirship would be defective (citing Sprigg v. Moale, 28 Md. 497 [92 Am. Dec. 698]; Kelso v. Stigar, 75 Md. 376, 24 Atl. 18). In general, in cases where the claim arises by virtue of the death of the collateral kindred, it is not sufficient to prove the death only of such collateral kindred; but there must also be some negative proof of the absence or want of issue. The plaintiff must remove every possibility of title in another before he can recover, in ejectment, against the person in possession (citing Hammond v. Inloes, 4 Md. 138; Sprigg v. Moale, 28 Md. 497 [92 Am. Dec. 698]; Richards v. Richards, 15 East, 294)."

[3] We understand the rule to be that a plaintiff, claiming title and possession of property, must remove every possibility of title in another, and must not only show affirmatively his relationship to the person under whom he claims, but must also show that no other heirs exist to impede the descent to him; and, in order to do this, he must negative the coming into existence of such heirs. The cases of Gorham v. Settegast, 44 Tex. Civ. App. 254, 98 S. W. 665, and Dunman v. Cloud, 3 Tex. Civ. App. 457, 22 S. W. 529, announce this rule.

[4] Appellant does not claim that the rule is otherwise than above stated, but insists that the testimony before set out, aided by the presumption that a state of things or status once shown to exist is presumed to continue until the contrary is shown by affirmative evidence, meets all the requirements of the rule placing the burden upon plaintiff to show that he is the sole heir of his half-brothers. His argument is that, having shown by the testimony above quoted that Phœbe Steddum was divorced in 1839, in the absence of any evidence to the contrary, the presumption is that she did not again marry, and that she died without other issue than her three children by Samuel Steddum.

We do not think presumption can take the place of proof under the rule above stated; nor do we think that any presumption that Phœbe Steddum did not remarry and have other issue than her children by Samuel Steddum can arise upon the testimony before

set out. Plaintiff's witness Martha Jane Earl testified that she knew Phœbe Steddum from a time prior to her divorce in 1839 to her death in 1851; and it is evident, from her testimony, that she knew whether Phœbe Steddum remained unmarried after her divorce from Samuel Steddum, and whether she had other children than those born to her by Samuel Steddum. It is clear that plaintiff could have shown by this witness the facts necessary to establish his title to the land; and, such being the case, the absence of such necessary facts cannot be supplied by presumption.

[5] There is another ground upon which the judgment of the court below should be affirmed. The evidence introduced by plaintiff shows that the certificate under which the land in controversy was obtained was assigned by Samuel Steddum to William Nash, to whom the patent was issued in 1852, but does not show when the assignment was made. If the certificate was transferred by Samuel Steddum prior to his divorce from Phœbe Steddum, the title to the whole of the land passed to the assignee of the certificate, and plaintiff could have no title under Phœbe Steddum. Plaintiff's petition describes the land in which he claims a half interest as "the same land described and covered by a certain patent issued by the state of Texas on the 22d day of August, 1852, to William Nash, assignee of Samuel Steddum."

The certified copy of the certificate of original survey, introduced in evidence by plaintiff, shows that the survey was made for William Nash, assignee of Samuel Steddum. To entitle plaintiff to recover the community interest of Phœbe Steddum in this survey, after having shown by the testimony introduced by him, and also by admission in his pleadings, that the certificate was sold by Samuel Steddum, he was required to show that such sale was not made prior to the divorce; and, failing to make such proof, he failed to show that Phœbe Steddum had any interest in the land at the time of the divorce, or at the time of her death. Upon this state of the evidence, we think the trial court properly instructed the jury to return a verdict for defendants.

We are further of the opinion that after this long lapse of time, nearly 70 years, it should be conclusively presumed, in the absence of any evidence to the contrary, that the sale of the certificate by the husband was made for the purpose of paying community debts; and the title to the whole of the land should be held to have passed to the purchaser at such sale, whether it was made before or after the divorce. Veramendi v. Hutchins, 48 Tex. 531; Id., 56 Tex. 414; Box v. Word, 65 Tex. 159; Baldwin v. Roberts, 13 Tex. Civ. App. 563, 36 S. W. 789; Brown v. Elmendorf, 25 S. W. 145.

For the reasons indicated, we think the judgment of the court below should be affirmed, and it has been so ordered.

Affirmed.

### On Motion for Rehearing.

[6] The very able argument filed by appellant's counsel on motion for rehearing has convinced us that two of the grounds upon which our judgment affirming the judgment of the court below was based are not tenable. There is evidence in the record sufficient to sustain a finding that the land certificate was sold by Samuel Steddum after his divorce from his wife, Phœbe Steddum. This evidence, which consists of a recital, in the duplicate certificate issued to Samuel Steddum on December 19, 1843, that the original certificate "has been lost, as appears by the oath of said Samuel Steddum," was not called to our attention by appellant's brief; and, in our former opinion, we assumed that the statement in appellee's brief that there was no evidence as to when the certificate was sold by Samuel Steddum was borne out by the record. The fact that at the time this duplicate certificate was issued, which was two years after the divorce, Samuel Steddum made oath that the original certificate was lost, in the absence of any evidence to the contrary, would sustain, if it does not compel, the finding that said certificate had not been previously sold by said Steddum. We also erred, in our former opinion herein, in holding that, upon the evidence in the record, it should be conclusively presumed, from lapse of time, that the certificate was sold by the husband for the purpose of paying community debts. The evidence is sufficient to sustain such finding; but the jury might have found otherwise, and the court could not properly have instructed a verdict for the defendant upon that issue.

We adhere to our former conclusion that the court properly instructed the jury to return a verdict for defendant because the evidence failed to show what interest in the land plaintiff was entitled to recover. It is not contended in the argument on motion for rehearing that, under the pleadings in this case, plaintiff could recover without showing prima facie that he owned the undivided one-half of the land claimed in his petition, or some definite interest less than one-half. The cases of Baldwin v. Goldfrank, 88 Tex. 261, 31 S. W. 1064, and Davidson v. Wallingford, 88 Tex. 619, 32 S. W. 1030, are, we think, conclusive upon this point.

Appellant's contention is that it was not necessary for plaintiff, in order to make a prima facie showing of title to an undivided one-half of the land, to prove that Mrs. Phœbe Steddum did not remarry after her divorce from Samuel Steddum, and died without other issue than her three children by Samuel Steddum. We quote from the argument of counsel: "If, under the law, her interest in the community estate was forfeited and

vested in the children, her remarriage and the birth of other children could not reinvest the estate in her. If that were true, then, having dishonored the marriage bed and thereby forfeited her interest, she could on the morrow marry her paramour and thus reacquire her forfeited estate, or vest same in the fruit of such marriage. That cannot be the law. No, her adultery, if held to be established by the divorce judgment, forfeited her interest in the community estate; and, by operation of law, same vested in their sons. This forfeiture was absolutely final and endured to the end of time, and 'as long as men have passions, and as long as the earth has woes.' And it follows, as certainly and as unerringly as a demonstration in Euclid, that whether Mrs. Phœbe Steddum lived or died, was married or single, had issue or remained more barren than Sarah, it could not and does not affect the rights of this appellant in the slightest degree. It must follow, too, unerringly and certainly, that if the wife's community estate vested, as seems undoubtedly to be the law, in the children, then we have proven heirship to the entire community interest derived through the wife, according to the strictest rule ever laid down by any court." We think it clear that in this argument appellant's counsel entirely overlook the fact that, if Mrs. Steddum remarried after her divorce and had other children as the fruit of such marriage, these children would bear the same relation to her children by Samuel Steddum as does the plaintiff, and would inherit equally with plaintiff the estate of their half-brothers, the three children of Samuel and Phœbe Steddum.

It is certainly true that the remarriage of Mrs. Steddum would not reinvest her with the estate which she had forfeited by her adultery. But her adultery could not work corruption of blood or in any way affect the capacity of children that were thereafter born to her to inherit property. If the forfeiture was in favor of her children by Samuel Steddum, upon the death of these children after the death of their father and mother, and without issue, any child of Mrs. Steddum by a second husband would inherit from them equally with plaintiff.

We think the motion for rehearing should be overruled, and it has been so ordered.