## W. S. IKARD ET AL. V. JAMES S. THOMPSON.

### No. 6890.

1. **Married Woman's Right to Acquire and to Partition Land.**—A contract to acquire land by a married woman by means of a land certificate held by her as her separate property, as well as a contract for the partition of her land, may be by parol.

2. **Same—Written Declarations may Show such Contracts.** — Principle, as well as the decisions of this court, warrant the conclusion that such contracts of a married woman as she may properly make by parol for the acquisition of lands or for its partition may equally well be proved by her written declarations, even when not acknowledged by her in the manner that the statute requires to make effectual her conveyance of real estate.

3. **Same—Married Woman's Signature as a Fact.**—Nor do we see any good reason why, when her signature to a written instrument may be proved as a fact, and

not for the purpose of establishing a conveyance of her property, the rules with regard to the proof of the execution of ancient instruments should not apply.

4. **Same—Case in Judgment.**—Mrs. B., a married woman, with her husband's consent, contracted with P. De Cordova that De Cordova should obtain and locate land certificates in which she was one-half owner as separate property, and for such services he should have one-third of the land he should acquire. De Cordova performed his part of the contract. Three tracts were acquired. De Cordova's interest was taken out of two of the surveys. The deed from Mrs. B. for the locative interest was not properly acknowledged by her. It bore date 1855, more than thirty years before the trial, and she was joined in it by her husband. Subsequently in a conveyance of the remaining part of the land Mrs. B. and her brother, the other joint owner, expressly ratified the conveyance to De Cordova. *Held*, that the conveyances were properly admitted in evidence, and that they were conclusive against Mrs. B. and her brother in favor of De Cordova and his assigns for the locative interest so partitioned to him.

5. **Mistake in Record of Will.** — In recorded copy of a will a tract of land is described as in Cooke County and conveyed to the testator by *Thomas* De Cordova. It was competent to prove that in the original will the name was *Phineas* De Cordova, and that but one deed from De Cordova to the testator was of record in Cooke County.

6. **Conclusions of Fact, etc.**—The form and substance of the findings of fact and of law should be left to the discretion of the trial judge. It can not injure a party that no finding is made upon a matter in which there is no conflict in the evidence.

APPEAL from Clay. Tried below before Hon. P. M. Stine.
The opinion states the case.

*Hazelwood & Templeton,* for appellants.—1. This purported deed never having been explained to Mrs. Bingham by the officer taking her acknowledgment, and there being no proof that the same was ever explained to her or that she ever executed or acknowledged it as required by law, said instrument was an absolute nullity and was not admissible for the purpose of conveying or in any way affecting her title to the property attempted to be conveyed by it, and its admission in evidence was error. Calahan v. Patterson, 4 Texas, 61, 62; Roy v. Bremond, 22 Texas, 626–638; Nichols v. Gordon, 25 Texas Supp., 109; Smith v. Elliott and Deats, 39 Texas, 201–208.

2. The plaintiff and his vendors being strangers to the Dean deed, the recitals therein contained will not, as against said plaintiff, estop defendants from claiming the land in controversy, nor operate to invest plaintiff with the title thereto, and the admission of said deed in evidence was error. Williams v. Chandler, 25 Texas, 4; Johnson v. Ryan, 62 Texas, 623; Grigsby v. Caruth, 57 Texas, 269; Same Case, 101 U. S., 240; Same Case, 117 U. S., 241; Burr v. Duryea, 2 Fish. Cas., 275; Bank v. Banks, 11 Otto, 240; Bige. on Estop., 272–275, and notes.

3. The original contract or agreement made by P. De Cordova with Maria Bingham and her husband having been reduced to writing, and the loss or destruction of such writing not having been sufficiently proved or accounted for, the proposed verbal evidence was not admis-

sible to establish the terms of such contract of location nor the contents of such writing, and the admission of such evidence was error. 1 Greenl. on Ev., secs. 87, 88, 557, 558, and notes.

4. Prior to the adoption of the Revised Statutes all conveyances by a married woman of her separate property, whether real or personal, to be valid and binding upon her were required to be reduced to writing and executed and acknowledged by her and her husband in the manner prescribed by the statute for the conveyance of her separate real estate; and unless they were so executed all her contracts made with reference to her separate property were absolutely null and void. Hart. Dig., 131, 737; Pasch. Dig., arts. 1003, 1005, and notes; Roy v. Bremond, 22 Texas, 627; Smith v. Elliott and Deats, 39 Texas, 201.

5. The court erred in admitting the parol testimony to aid the defective description of the land attempted to be devised by will of J.. W. Scott. Norris v. Hunt, 51 Texas, 609; 1 Greenl. on Ev., sec. 297; 2 Dev. on Deeds, secs. 1010, 1011; 1 Am. and Eng. Encyc. of Law, 535–540, et seq.; Tied. on Real Prop., sec. 883; Beach on Wills, secs. 354, 358.

6. The court erred in failing and refusing to find what was the legal effect of the contract of Maria Bingham and her husband made with De Cordova as testified to by him, and in failing to find whether said contract conveyed to De Cordova any interest in the land in controversy. Rev. Stats., art. 1333; Callaghan v. Grenet, 66 Texas, 236; North v. Lumbeth, 3 Ct. App. C. C., sec. 53.

*A. K. Swan* and *West & McGown,* for appellee.—1. The deed from Mrs. Bingham and her husband to De Cordova is admissible as an ancient instrument, and in itself is sufficient to operate as a partition of land in which she and De Cordova held a joint interest. Wardlow v. Miller, 69 Texas, 394; Pasture Co. v. Preston, 65 Texas, 448; Glasscock v. Hughes, 55 Texas, 461; Cox v. Cock, 59 Texas, 524.

2. The deed above referred to was admissible in connection with the testimony of De Cordova to show that there was a locative contract between Mrs. Bingham and her husband and De Cordova, thus manifesting the intent of the parties thereto. Womack v. Womack, 8 Texas, 415; Hobby's Land Law, sec. 1653.

3. The deed above referred to was further admissible in connection with the deed from Wm. G. Fisher, Maria Bingham, and Jno. G. Bingham to A. M. Dean, to support and show a title by estoppel in appellee as against appellants. Box v. Lawrence, 14 Texas, 545; Parker v. Campbell, 21 Texas, 763; Borden v. Houston, 2 Texas, 594.

4. Extraneous evidence such as the testimony of Erichson, Frost, and Walker was admissible to correct the apparent misdescription of the land in suit as same was described in Scott's will, and to identify with certainty the property intended to.be devised to appellee.. Dou-

thit v. Robinson, 55 Texas, 69; Early v. Sterrett, 18 Texas, 113; Hunt v. White, 24 Texas, 643; Hawkins v. Garland, 44 Am. Rep., 160; 1 Greenl. on Ev., sec. 287.

5.   A valid locative contract having been shown by the testimony of De Cordova, and by the admission in the deed to Dean, De Cordova was entitled, as compensation for his services, to the land in controversy.   Smock v. Tandy, 28 Texas, 132; Gibbons v. Bell, 45 Texas, 417; Reed v. West, 47 Texas, 248.

6.   The locative contract with De Cordova was as fully binding on William G. Fisher and his privies as if signed by him, he having accepted its benefits.   The locative contract was likewise as fully binding on Mrs. Maria Bingham and her privies as if executed with all the legal formalities of law, she having ratified same and accepted its benefits.   Reed v. West, 47 Texas, 248; Wardlow v. Miller, 69 Texas, 394; Hobby's Land Law, sec. 1186.

HENRY, ASSOCIATE JUSTICE.—This was an action of trespass to try title brought by the appellee to recover a tract of 672 acres of land specifically described, and being a part of the one-third league survey in Clay County patented to the heirs of John H. Fisher.   The cause was tried without a jury, and the following conclusions of fact were filed by the judge:

"The certificate by virtue of which the land in controversy was located was issued to the heirs of J. H. Fisher, who died about 1836. He died unmarried and left surviving him one brother, Wm. G. Fisher, and one sister, Maria Bingham, who were his sole heirs.

"P. De Cordova had a contract with Maria Bingham for procuring and locating the said certificate, together with two other certificates, by the terms of which he was to receive one-third of the land so located. P. De Cordova afterward procured the certificates, located the lands, and obtained patents in performance of said contract.

"Wm. G. Fisher, Maria Bingham, and her husband, in a deed executed to A. M. Dean on the 28th day of May, 1856, after the location of said land through which defendants claim a part of the survey described in plaintiff's petition, recite the fact of a locative contract with P. De Cordova, and that he is entitled to 672 acres out of said survey for his services, and expressly reserve said 672 acres from said transfer.

"A contract of partition was made by Maria Bingham and her husband with De Cordova, whereby De Cordova was to receive the land in controversy.

"The evidence shows a complete chain of title from De Cordova to plaintiff for the land in controversy.   Maria Bingham was a married woman at the date of the locative contract as testified by De Cordova, and also at the time she executed the instrument introduced in evidence."

P. De Cordova testified: "I made a contract through Hays and Morrill, her (Maria Bingham's) acting attorneys, to procure from the State of Texas the land that her brother John H. Fisher was entitled to.    I was to procure the certificates, locate them, and procure patents, for which I was to get one-third of the land.  The contract was in writing; it was forwarded to Hays and Morrill, who had it executed by Maria Bingham.  It was coupled with authority to procure the certificate, and under the law had to be filed with the other papers in the Adjutant-General's Office.   I sent Hays and Morrill a blank contract for the heirs to sign, agreeing to my proposition to give me one-third of the land for procuring the certificates and locating the land and obtaining the patents.   I also sent them a blank power of attorney, without which the certificates would not have been issued.   The contract with the heirs and the power of attorney to me to receive the certificate and proof of heirship were duly executed and sent to me, and I lodged the two latter instruments in the Adjutant-General's Office, which records have since been destroyed by fire.   The contract was made, executed, and delivered by Mrs. Bingham and her husband in Tennessee and sent to me before she came to Texas, through Hays and Morrill, who were acting as her attorneys.   It would not have been a businesslike transaction for me to have entered on this business without my fees and services being secured by a contract in writing, and my contract with the heirs as aforesaid was in writing and signed in Tennessee, and the deed referred to in my depositions as exhibit A (the deed from Mrs. Bingham and her husband to De Cordova) is the result of the contract. Under this contract with Maria Bingham I procured the certificates, located the lands, obtained patents therefor, and received my deed for one-third according to contract.   Among the deeds which I received from her (Mrs. Bingham) was one for 672 acres of land out of the 1476 acres survey made by virtue of John H. Fisher's headright situated in Cooke County.   Mrs. Maria Bingham, joined by her husband John G. Bingham, deeded me 472 acres of land out of the John H. Fisher headright."

The deed referred to from Mrs. Bingham and her husband as conveying the 672 acres of land describes said lands by metes and bounds, and as a part of the one-third league patented to the heirs of John H. Fisher. It is signed by Maria Bingham and her husband John G. Bingham, and is dated the 24th day of May, 1855.   It was properly acknowledged for record by the husband, but the acknowledgment of the wife was insufficient as a married woman's acknowledgment of a deed conveying the title of land.   Pasch. Dig., art. 1003.

The plaintiff introduced in evidence a deed from W. G. Fisher, Maria Bingham, and John G. Bingham to A. M. Dean, dated the 28th day of May, 1856, duly acknowledged for record by all of the grantors, conveying to the said Dean all of said one-third league, which contained

the following words of exclusion: "Excepting and it is expressly un-derstood that the said Maria Bingham, John G. Bingham, and W. G. Fisher hereby reserve an undivided interest of 672 acres of the above described land, the same being the amount to which the locator of said land, to-wit, P. De Cordova, is entitled as a locative interest," etc.

It is urged that the court erred in admitting for any purpose the evi-dence of De Cordova or either of said deeds, and that Mrs. Bingham could not bind herself to perform such a contract otherwise than by a privy examination as prescribed by the statute then in force with re-gard to the sale and conveyance of her separate property.

The language of the statute in force when the deeds in question were executed, requiring a separate examination of a married woman, was as follows: "That when a husband and his wife have signed and sealed any deed or other writing purporting to be a conveyance of any estate or interest in any land, slave or slaves, *or other effects* the separate property of the wife," etc. Pasch. Dig., art. 1003. By the Revised Statutes, article 559, it is provided that "the husband and wife shall join in the conveyance of *real estate* the separate property of the wife; and no such conveyance shall take effect until the same shall have been acknowledged by her privily and apart from her husband," etc. By the statute of frauds which has been in force in this State since 1840 it is required that contracts for the sale of lands shall be in writing.

It has been decided by this court that a contract to acquire land, by which the owner of a land certificate agreed to furnish it to a person who agreed to have it located and patented and to receive part of the land so acquired as the consideration for his services and expenses, is not within the statute of frauds, and is binding. Smock v. Tandy, 28 Texas, 130; Miller v. Roberts, 18 Texas, 19; Gibbons v. Bell, 45 Texas, 417.

In the case of Wardlow v. Miller, 69 Texas, 399, it was said by Chief Justice Willie: "In the present case it was shown that both husband and wife consented to the division of the property (land). This they state themselves. The consent given by the wife in writing was not binding on her as a conveyance, but it did not lessen the force of what was done by parol. One deed had her signature to it, and the other she affirmed after it was made. Neither was so signed as to meet the statute regulating the conveyance of the property of married women, but they were both sufficient to show that she knew of the partition without disapproving it. * * * She could not have avoided the partition merely for the reason that she had not signed the instruments alluded to and acknowledged them as required by law in cases of con-veyances by married women."

Land certificates are treated as personal property in this State. When the first agreement between Mrs. Bingham and De Cordova was made the certificates had not been issued. While the right to them existed, it had not been established. It was for the benefit of her separate prop-

erty that they should be procured and located.   She could contract a debt for that purpose; and if, not having money to discharge the debt, she chose to pay it with part of the certificates, it is difficult to see why the settlement of the obligation should not be held binding because instead of being made with money it was done with property that could be transferred by a verbal agreement.

If it be conceded that the law in force at that time deprived married women of the power to sell and convey their personal property except in writing and when privily examined, which we do not affirm, we still can not see why such a transaction as the one now being considered should be treated as a sale and conveyance under the married woman's act and prohibited by it, any more than such a transaction should be regarded as a sale prohibited by the statute of frauds.   We think that such a contract to acquire land by a married woman, by means of a land certificate held by her as her separate property as well as a contract for the partition of her land, may be by parol, and that principle as well as the decisions of this court warrant the conclusion that such contracts of a married woman as she may properly make by parol for the acquisition of land or for its partition may equally well be proved by her written declarations, even when not acknowledged by her in the manner the statute requires to make effective her conveyance of real estate.   Nor do we see any good reason why, when her signature to a written instrument may be proved as a fact and not for the purpose of establishing a conveyance of her property, the rules with regard to the proof of the execution of ancient instruments should not be applied.

For these reasons, and because it was proper to prove the consent of her husband to his wife's contract for the location of the certificates, we think the deed to De Cordova from Mrs. Bingham and her husband was properly admitted as evidence.   That deed was also properly admitted, in connection with the subsequent deed to Dean made by the same parties and their cotenant W. G. Fisher, to show that the land had been partitioned, and that in lieu of his undivided interest in the whole De Cordova had acquired in severalty the particular land that the plaintiff sued for and recovered.   The deed from Bingham and his wife to De Cordova attempted to make partition, but it was inoperative for that purpose, because W. G. Fisher, the cotenant of Mrs. Bingham, was not a party to the partition.   No more was he a party to the agreement to make title to De Cordova until he ratified it.   The deed to Dean is evidence, we think, of William G. Fisher's ratification of the contract for the location of the certificates, and of the partition through which De Cordova acquired in severalty the land in controversy.   It is true that the deed to Dean refers to the interest of De Cordova in the one-third league as an undivided interest.   But it also refers to it as 672 acres, which, as De Cordova was to get only a one-third interest in

the whole, was not expressive of his interest in a tract containing 1476 acres.

The other evidence shows that he procured and located three certificates, one for 1920 acres, one for 1476 acres, and the other for 640 acres, and that he received his entire interest, amounting to 1345 acres, out of the two larger surveys. The reference to the quantity of De Cordova's interest in the one-third league survey made in the Dean deed is not consistent with any other theory than that W. G. Fisher was aware of the division previously agreed upon, and that all parties intended to recognize and confirm it.

The age of the transactions and their apparent justice add force to the conclusion that they should now be recognized and enforced, and on less evidence than might be required in more recent transactions. The loss of the original correspondence and contract between De Cordova and Mrs. Bingham was sufficiently shown, and the evidence of the former was properly admitted and was sufficient to establish the substantial contents of the lost papers.

The will of J. W. Scott formed one of the links in plaintiff's title. The description of the land as contained in the will was as follows: "A tract in Cooke County Land District deeded to me by Thomas De Cordova, of Austin, and recorded in record of deeds in the town of Gainesville, Cooke County." This will was probated in Harris County, Texas. Erichson, the county clerk of Harris County, testified in substance as follows: "That the original will of J. W. Scott was yet on file among the probate records of his office, and that this copy (which had been introduced in evidence and from which the clause above written was taken) was an exact copy of the record of said will as the same appeared upon the probate minutes of said county, and that it was also an exact copy of said original will except that in the original will the name of De Cordova was written 'Phineas,' while in the copy it was 'Thomas.'" Walker and Frost testified in substance that during the year 1887 they had made a close examination of the deed records of Cooke County, and that they had found but one deed from P. De Cordova to J. W. Scott recorded in the Cooke County records, and that this was the deed given in evidence by plaintiff. We think the evidence was properly admitted and considered. Hunt v. White, 24 Texas, 652.

The following errors are assigned upon the judge's findings of fact and law:

"The court erred in failing and refusing to find upon and file his conclusions of fact and law upon all of the points of fact and law as set out and requested by defendants in their written request for such findings, which written request, together with the action of the court thereon, is set out in defendant's bill of exceptions No. 5, which bill is here referred to.

"The court erred in failing and refusing to find, (1) what the effect was of the written instrument which purported to be a deed from John G. Bingham and his wife Maria Bingham to P. De Cordova; and (2) what the effect was of the deed from Maria Bingham and John G. Bingham and Wm. G. Fisher to A. M. Dean, upon both of which points the defendants requested the court to give his conclusions in writing.

"The court erred in failing and refusing to find, (1) whether or not the evidence established the existence of a valid written contract for the location of the land in controversy between P. De Cordova and Mrs. Bingham and her.husband; (2) whether or not this contract was ever acknowledged by Mrs. Bingham so as to make it binding upon her and so as to convey her separate property; (3) what became of it; (4) what were its contents; (5) whether or not it was ever ratified by William G. Fisher, and if yea, when, where, and how it was so ratified; (6) in failing to find whether or not Fisher, at the time of such ratification, knew what were the terms of the contract which he had so ratified.

"The court erred in failing and refusing to find whether or not P. De Cordova or his vendees had ever been in the actual possession of the land sued for, and in failing to find who were the heirs of Maria Bingham and William G. Fisher.

"The court erred in failing and refusing to find what was the legal effect of the contract of Maria Bingham and her husband made with De Cordova as testified to by him, and in failing to find whether said contract conveyed to De Cordova any interest in the land in controversy."

The first of said assignments is too general to be considered, and we think it sufficient to say with regard to the others that we will not reverse a judgment because the findings of law are general instead of being specific. The form and substance of the findings in that respect should, we think, be left to the discretion of the judge. They should be kept separate from the findings of fact. Andrews v. Key, 77 Texas, 39.

It is unquestionably of importance and a valuable right of the parties that the court shall find separately and distinctly upon all material issues of fact, and especially upon such as are controverted. An examination of the record leads us to conclude that the findings of law and fact include the material issues in the cause, and if among the issues of fact there is a material one to which the findings do not specifically relate there was not upon such issue any conflict in the evidence. Where there is no conflict in the evidence upon the issue, if a statement of facts is preserved, no injury need result to the complaining party from the failure of the judge to include it in his findings.

The remaining assignments of error question the sufficiency of the evidence to sustain the judge's findings of fact and the correctness of his conclusions of law. We think the findings of fact are amply sus-

tained by the evidence and that the judgment rendered was warranted by it. To discuss these assignments in detail would involve a repetition of what we have already substantially said.

We find no error in the proceedings for which we think the judgment should be reversed, and it is therefore affirmed.

*Affirmed.*

Delivered June 5, 1891.