**KENLEY v. ROBB et al.   (No. 355–3107.)**

(Commission of Appeals of Texas, Section A.
Nov. 22, 1922.)

**1. Acknowledgment ⊜➡36(2)—To transfer of
land certificate held sufficient.**

An acknowledgment to the transfer of a
land certificate prior to location *held* in sub-
stantial compliance with Paschal's Dig. arts.
5008, 5010, although it recited that affiant was
"represented" to the notary as the person
whose signature appeared as witness to the
transfer.

**2. Public lands ⊜➡174—Separate certificates to
land certificate, transfer, and acknowledgment
held unnecessary to entitle to record.**

Where a land certificate with a transfer and
acknowledgment of the transfer were all in-
cluded under one certificate from the General
Land Office, it was proper to place them on rec-
ord, a separate certificate to each instrument
by the Land Commissioner not being necessary,
especially where the instruments were all on
the same piece of paper.

**3. Public lands ⊜➡178(3)—Transfer of land
certificate held transfer of personalty.**

A land certificate prior to its location being
personal property a transfer of the "within in-
strument" does not come within the statutes
regulating the conveyance of real estate.

**4. Public lands ⊜➡178(3)—Recordation of
transfer of land certificate held notice to sub-
sequent purchasers.**

Where a land certificate, issued by the re-
public of Texas on September 5, 1839, was
transferred by notation on the certificate No-
vember 1, 1839, and the field notes made out on
behalf of the transferee were filed in the Gen-
eral Land Office, prior to acquisition of other
rights, all subsequent purchasers from the heirs
of the original grantee were given due notice
that he had parted with his title to his trans-
feree.

**5. Execution ⊜➡127, 219—Separate levy and
sale under each of several executions not
necessary.**

Where a sheriff has executions in his hands
for levy, which he does levy, and there is noth-
ing in the record to show that any one execution
had priority over the others, there is no
statutory requirement that there shall be a
separate levy and sale under each.

**6. Evidence ⊜➡372(8)—Sheriff's deed held ad-
missible as ancient instrument.**

In trespass to try title, where defendants
interposed a legal outstanding title based upon
a judgment or execution sale, the sheriff's deed
was admissible as an ancient instrument, where
it was more than 30 years old and it appeared
that the court records had been destroyed.

**7. Trespass to try title ⊜➡16—Outstanding
superior legal title shown by defendants com-
plete defense.**

In trespass to try title, plaintiff not having
established the necessary superior legal or
equitable title, an outstanding superior legal

title shown by defendants was a complete de-
fense.

Error to Court of Civil Appeals of Ninth
Supreme Judicial District.

Trespass to try title by C. H. Kenley
against H. L. Robb and others. Judgment
for defendants, affirmed by the Court of Civ-
il Appeals on rehearing (193 S. W. 375), and
plaintiff brings error. Reversed and ren-
dered, in accordance with recommendation of
Commission of Appeals.

Hill & Elkins and A. T. McKinney, all of
Huntsville, and C. M. Hightower, of Hous-
ton, for plaintiff in error.

Dean, Humphrey & Powell, of Huntsville,
for defendants in error.

RANDOLPH, J.   C. H. Kenley, hereinafter
styled plaintiff, brought this suit in trespass
to try title against H. L. Robb et al., herein-
after styled defendants, to recover a certain
tract of land. The trial in the district court
resulted in a verdict and judgment for the
defendants for the tracts of land claimed by
them, and on appeal this judgment was, by
the Court of Civil Appeals, first reversed and
then, on motion for rehearing, affirmed (193
S. W. 375–390), with dissenting opinion by
Judge Brookes.

The writ of error herein was granted by
the Supreme Court by reason of the dissent
of Judge Brookes, as shown by their nota-
tion.

The plaintiff claimed title by mesne con-
veyance from and under the patentee John
Andrews, and the defendants claimed under
the heirs of said Andrews. Defendants also
set up outstanding legal title as against the
plaintiff's claim of superior title.

Such further facts necessary to be stated
for a full understanding of the questions be-
fore the court will be set forth in the discus-
sion of the various assignments of error.

The first assignment of error, in the ap-
plication for writ of error, presents the ques-
tion of error in the holding by the Court of
Civil Appeals that the certificate of acknowl-
edgment to the transfer from John Andrews
to William Penn was not in compliance with
the statutes as they then existed.

The land certificate to John Andrews is as
follows:

"Republic of Texas, County of Liberty. No.
355. This is to ——— that John Andrews has
appeared before us, the board of land com'rs of
the county aforesaid, and proved according to
law that he emigrated to this republic on the
18th day of May, A. D. 1836, a single man; that
he has served in the army and rec'd an honorable
discharge, and is entitled to one-third of a
league of land, for which this is his certificate.
Given under our hands, this 5th day of Septem-
ber, A. D. 1839. Hugh B. Johnson, Chf. J. C.
L., Ex Off'o Pres. B. Land Com'rs. Alexander

---

⊜➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

S. Roberts, Associate do. Attest: Geo. W. Miles, Clk. Co. Court, Ex offo. Associate do. C. B. Land Com'rs.

"Filed for record August 9, 1875, and recorded in deed records of Trinity county, Texas, at Book B, pages 175 and 176."

The transfer of the certificate was in writing on the back of the certificate, and is in words as follows:

"Transfer of Certificate John Andrews to William Penn. [Following is copy of transfer indorsed on certificate set out above:] Know all men by these presents that I, John Andrews, sell, transfer or bargain, and deliver, in the county of Houston and Republic of Texas, unto William Penn, in the county and republic aforesaid, the within claim or certificate, for the sum of seven hundred thirty eight dollars and 50/100 cents in hand paid, the title whereof I will always support and defend against my heirs, assigns, administrators or administratrix as given under my hand and seal, this 1st day of November, 1839. John Andrews. [Seal.] Signed and delivered in the presence of us. Test: B. F. Wright, C. N. Nelson."

It will be observed that this transfer bears date 1st of November, 1839.

There is also found on the back of the certificate an acknowledgment bearing date 3d of November, 1856, which acknowledgment is as follows:

"The State of Texas, Travis County. Before me, N. C. Raymond, a notary public in and for said county, duly commissioned and sworn, personally appeared B. F. Wright, who is represented to me as the identical B. F. Wright whose signature appears as a witness to the transfer hereto annexed, who upon his oath says, that he was present and saw John Andrews sign the same as his voluntary act and deed, and that he acknowledged that he did so for all the uses, purposes and considerations therein set forth and expressed; that he signed the same as a witness at the request of the said parties thereto. Given under my hand and notarial seal at Austin, this 3d November, 1856. [L. S.] N. C. Raymond, Not. Pub. Travis Co."

These three instruments are included under one general certificate from S. Crosby, Commissioner of the General Land Office of the state of Texas, who certifies that the "foregoing, with the erasures are correct copies of the originals on file in this office," and also contain the following certificate:

"The State of Texas, County of Trinity. I hereby certify that the foregoing deed of conveyance is duly recorded in my office, in Book B, pages 527 and 528, of the county records for deeds, etc. In testimony of which, I have hereunto set my hand and seal of office at Sumpter, 25th March, 1859. Bryant S. Mangum, Clk. Co. Ct.

"Filed for record August 9, 1875, and recorded in Deed Records of Trinity county, Texas, Book B, pages 175 and 176."

The objection made to this acknowledgment is that it was made by proof of the subscribing witness; that such witness was not proved to be such to the officer taking the acknowledgment by the oath of a credible witness, it being merely stated in the acknowledgment that the said witness, B. F. Wright, was represented to the officer to be the subscribing witness to the transfer.

Articles 5008 and 5010, Paschal's Digest of the Laws of Texas, in force at the time of the making of this acknowledgment, are as follows:

"Art. 5008. The proof of any instrument of writing for the purpose of being recorded, shall be by one or more of the subscribing witnesses personally appearing before some officer authorized to take such proof, and stating on oath that he or they saw the grantor, or person who executed such instrument subscribe the same— or that the grantor or person who executed such instrument of writing acknowledged in his or their presence, that he had subscribed and executed the same for the purposes and consideration therein stated—and that he or they had signed the same as witnesses, at the request of the grantor or person who executed such instrument; and the officer taking said proof shall make a certificate thereof, sign and seal the same with his official seal."

"Art. 5010. Whenever any grantor or person who executed any instrument of writing, or any subscribing witness to any such instrument, shall appear before any officer authorized to take acknowledgments or proofs of such instruments, for the purpose of acknowledging or proving such instrument for record, if such grantor or person who executed such instrument, or subscribing witness, shall be personally unknown to such officer, his identity, and his being the person he purports to be on the face of such instrument of writing, shall be proven to such officer; which proof may be made by witnesses known to the officer, or the affidavit of such grantor or person who executed such instrument, or subscribing witness, if such officer shall be satisfied therewith; * * * shall also be indorsed on such instrument."

In the case of Lindley v. Lindley, 92 Tex. 446, 49 S. W. 573, passing upon the requirements of articles 4616, 4617, and 4619, Revised Civil Statutes of Texas, and considering the following acknowledgment:

"State of Texas, Hopkins County. Before me, A. P. Landers, clerk of the county court of Hopkins county, Texas, on this day personally appeared Wesley Sutton, known to me by introduction by C. W. Deems to be the person whose signature is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed. Given under my hand and official seal, at Sulphur Springs, Texas, this 27th day of June, 1884. A. P. Landers, Clerk County Court, Hopkins County, Texas. [Seal.]"

the Supreme Court, speaking by Justice Brown, holds:

"All officers who are authorized to take and certify acknowledgments to and proof of instruments for registration are required to take the oath of office prescribed by the Constitution, and to give bonds for the faithful performance

of their duties, and each official act in taking such acknowledgment is done under the sanction of the official oath, and upon the official responsibility of the officer so acting. . It is the policy of our statutes to require each officer to comply, with the requirements of the law in taking acknowledgments to such instruments, and to make a certificate of the facts which shall show such compliance. The law has not prescribed the extent of acquaintance which is necessary to justify an officer in certifying that the person who presents ' himself is known to the officer to be the person who signed the instrument in question; but that question is, and necessarily must be, submitted to the decision of each officer, under the facts as they exist at the time the act is done. When such officer has determined, upon the evidence presented to him, that he identifies the person in question as being the same that executed the instrument under consideration, and when he so certifies according to law, the certificate must be held to be sufficient, unless upon its face it shows that in fact the statement of such knowledge is untrue.

"The words 'by introduction by C. W. Deems,' in the acknowledgment submitted, are surplusage, and may be stricken out without affecting the meaning or validity of the certificate. They do not show that the introduction was the only means of knowledge possessed by the officer at the time, and it may be, and doubtless is, true that there were other circumstances known to the officer, which, concurring with the introduction, served to satisfy his mind upon the question. Sowers v. Peterson, 59 Tex. 218. If Landers, the clerk, was satisfied that Sutton was the same person whose name was signed to the deed, he could properly certify as required by law, whether his acquaintance was limited to an hour or extended to the period of a year. We do not intend to hold that a mere introduction is sufficient to authorize the official to make the certificate that the person introduced is known to him (the officer); but if he be satisfied, and make the certificate, the fact that he expressed in that certificate that the person was so introduced will not invalidate the official act, which would otherwise be valid."

[1] We can see no difference between "made known to me by introduction" and "who is represented to me." When a person is introduced to another, by this introduction the introducer represents the person being introduced as the very man he says that he is. We therefore hold that the acknowledgment in the case at bar is in substantial compliance with the statutes as they were in force at the date of such acknowledgment.

[2] The second assignment in the application for writ of error presents the question that the Court of Civil Appeals erred in holding that T. B. Leach was an innocent purchaser for value without notice of plaintiff's title. This question has been disposed of in part by our ruling on the acknowledgment discussed above, as the evidence shows that a certified copy of the certificate to John Andrews, the transfer from John Andrews to William Penn,. together with said acknowledgment, had been duly recorded in the Deed Records of Liberty county, Texas, where the land was situated. This we hold, notwithstanding the objection of the defendants that all of these instruments were included under one certificate from the General Land Office, and the further objection that the transfer did not identify the certificate attempted to be conveyed. We know of no reason or provision of the law requiring a separate certificate to each instrument by the Land Commissioner. Especially is this true under the facts in this case—the certificate, the transfer, and acknowledgment all being on the same piece of paper. The transfer from John Andrews to William Penn did not attempt to describe the certificate transferred except to refer to same as the "within certificate."

[3] For the purpose of this branch of the discussion, we ignore the certificate of acknowledgment and viewing this as a transfer of personal property, such an instrument in which the party transfers the "within instrument" does not come within the provisions of the statutes regulating the conveyance of real estate because the transfer of the certificate was a transfer of personal property.

A land certificate prior to its location has been uniformly held to be personal property, by the Supreme Court of Texas in many decisions, some of which will be quoted from below, and the Supreme Court has also held that the recording thereof was not necessary under the statutes in force at that time to make it a valid conveyance and to carry notice to subsequent purchasers and creditors.

In the case of Hill v. Moore, 62 Tex. 610-614, it is held that land certificates may pass by an assignment in blank, and in the case of Dean v. Blount, 71 Tex. 270, 9 S. W. 168, the court holds that a land certificate upon which is indorsed a conveyance in blank that the holder has the right to fill the blank left for the vendee, even after the certificate was located.

It has also been held by the Supreme Court that unlocated land certificates are personal property subject to verbal sale and delivery. Stone v. Brown, 54 Tex. 334; Ikard v. Thompson, 81 Tex. 290, 291, 16 S. W. 1019; and many other decisions of that court not necessary to cite.

If this certificate was susceptible of being transferred by a verbal sale and delivery, and if it was subject to conveyance by assignment in blank, then we must hold that the evidence in this case shows that the certificate was transferred prior to its location by John Andrews to William Penn, and the only question affecting this transfer is: Was it transferred in such manner as gave notice to subsequent purchasers of the land for value that Andrews had transferred it to William Penn?

[4] The land certificate to John Andrews was issued on the 5th day of September, 1839. It was transferred as noted on the cer-

tificate the 1st day of November, 1839, to William Penn; the field notes were made out in behalf of William Penn by the surveyor and filed in the General Land Office. All of these acts were performed and the instruments filed in the Land Office prior to the acquiring of any rights in the land by the vendors of the defendants. Under these circumstances we are constrained to hold that all subsequent purchasers from the heirs of John Andrews were given due notice that he had parted with his title to the certificate to the land to William Penn.

In the case of Dodge v. Litter, 73 Tex. 320, 11 S. W. 331, the certificate by virtue of which the land was located was issued in 1838 to Hezekiah R. Williams, who was then married to Levina Williams. The husband died, leaving children and his wife surviving him. Before the certificate was located, the wife in writing transferred her one-half interest therein to William Lewis in 1857. Shortly afterward the certificate was located upon titled lands in Johnson county, and the field notes and certificate returned to the General Land Office. The transfer to Lewis was not recorded in Johnson county or filed in the Land Office. A certified transcript from the General Land Office containing the field notes on the three surveys in Johnson county by virtue of the H. R. Williams' three-fourths league survey, issued in the year 1857, was introduced in evidence in the case and the Land Office indorsement and memoranda relating thereto and also the following memoranda:

"The State of Texas, Johnson County. The balance of said certificate is entered for 1,742 less 400 acres by virtue of H. R. Williams' headright No. 54. Beginning at a point 672 west and 1,380 vrs. of J. R. Leonard southwest corner; thence north 2,376 vrs. a point; thence west 2,752 to the east line of Johnson county school land, a corner natural stone brs. west 4 vrs.; thence south 2,376 vrs. to the north line of a survey made for J. H. Cooper, 85 vrs. east of its northwest corner; thence east to the place of beginning, so as 'to include the above 1,342 acres of land for my third survey. Buchanan, March 2, 1957. William Lewis.

"Recorded March 2, 1857. G. M. Pierce, C. S.

"Filed in General Land Office, May 5, 1858."

On the 3d day of June, 1868, the surviving wife of H. R. Williams a second time conveyed by deed her half interest in the land to R. H. Leonard, who the evidence tends to show purchased without any other notice of the first sale *than the above described memorandum* may be held to have furnished.

Leonard having purchased the children's interest also, withdrew the certificate from the Land Office and on the 20th of March, 1869, sold it to appellants' testator. After the purchase by the testator of Dodge, he caused it to be located on land in Jasper county in November, 1870. Upon the ques-

tion of whether or not Leonard or Dodge, or either, were innocent purchasers without notice, the Supreme Court held as follows:

"Appellants insist that 'the court erred in rendering judgment for the defendants in this, that the widow of Hezekiah R. Williams being the apparent owner of one-half the certificate by virtue of which the land in controversy was located, and the conveyance of the same to said Wm. E. Dodge being accompanied by actual delivery to him of said certificate, warranted him in believing that he was getting a good title to her interest in said certificate and constituted him an innocent purchaser thereof, and the court should have rendered judgment for plaintiffs.'

"It is well settled in this state that a land certificate is personal property, and its sale and conveyance are regulated by the rules relating to personal property.

"It is a general rule attending sales of personal property that the purchaser cannot acquire a better title to the thing sold than the seller owned. There are circumstances in which the purchaser may acquire a better title than his vendor had, growing out of the principles of estoppel, none of which are found to exist in this case.

"Our registration laws at the time of the first conveyance of her interest in the certificate by the surviving wife of Hezekiah R. Williams did not require the recording of the conveyance to make it valid against subsequent purchasers for value without notice.

"The evidence shows that the certificate was not left in her possession by the purchaser under such circumstances as would have invested her with the apparent ownership over it, thereby aiding her to mislead and defraud the subsequent purchaser and thus giving him the better right. On the contrary the certificate was not found in the possession of the wife or children of the original grantee when the second purchase of the wife's interest was made, but in the Land Office, regularly applied to land which it could not hold; and while the proceedings did not furnish such evidence as they might and could easily have been made to do of the sale of the certificate, we yet think that the memorandum, signed by William Lewis and asserting his claim to the land, made it the duty of the purchaser to institute inquiry as to his connection with the certificate. That inquiry it seems would have led to knowledge that Lewis had purchased and sold the interest of the wife.

"It does not appear that Leonard made any inquiries. Armstrong was the agent by whom Leonard withdrew the certificate from the Land Office, and was also shortly afterwards agent for appellants' testator in making his purchase from Leonard, wherefore appellants are chargeable with such knowledge as their agent had, and it does not appear that they, any more than their vendor Leonard, exercised such diligence as was reasonably proper under the circumstances.

"The land certificate being personal property, the half interest of the wife having been sold to the remote vendor of appellees, the sale being unaffected by the registration laws as they then stood, and the record not showing that the purchaser did or omitted to do any

act misleading subsequent purchasers or estopping himself, we think the wife by her first sale divested herself of all interest in the certificate, and the second purchaser from her acquired no title."

So far as a careful search discloses, we have been unable to find that the Supreme Court of Texas has ever overruled or modified the opinion in the Dodge Case above quoted from, and, as that case is in our opinion decisive on the question of notice, we hold that the transfer indorsed on the back of the certificate to John Andrews and the issuance of the field notes in the name of William Penn on file in the General Land Office were sufficient to put the subsequent purchasers upon inquiry, which inquiry would have led to the knowledge of the fact that John Andrews had parted with his title to the certificate to William Penn.

The plaintiff's third, fourth, and fifth assignments of error presented in his application for writ of error bring before us in varied forms the action of the Court of Civil Appeals in holding that the deed from the sheriff of Trinity county to H. N. Jones and S. Y. Smith showed outstanding title in those parties as against plaintiff's claim of superior title in himself.

Under the findings of fact of the trial court and the statement of facts, we find that John Andrews conveyed the above certificate to William Penn; that the heirs of William Penn conveyed the land to A. J. Frisby; that A. J. Frisby and wife, Elizabeth, conveyed the land on the 12th of November, 1861, to Mrs. Margaret McDonald; that prior to the 6th day of October, A. D. 1868, Mrs. Elizabeth Frisby had died; and that A. J. Frisby and Mrs. Margaret McDonald had intermarried; and we quote from the findings of fact in the trial court as follows:

"(10) On the 4th day of November, 1868, R. A. Clifton, sheriff of Trinity county, Texas, by deed of that date, conveyed the land in controversy to H. N. Jones and S. Y. Smith, pursuant to a sale thereof under three executions recited in said deed to have been issued out of the county court of Trinity county, Texas, in favor of F. G. Roberts v. A. J. Frisby and Margaret Frisby on three certain judgments rendered on the 6th day of October, 1868, and directed and delivered to the said Clifton as sheriff of Trinity county. The said sheriff's deed recites the proper notices of the time and place of sale to be made thereunder, and sale within legal hours on the first Tuesday in November, 1868, and that the grantees in the deed, H. N. Jones and S. Y. Smith, bid therefor and paid the sum of $322 in United States currency, they being the highest bidders and that being the highest and best bid therefor.

"(11) All of the court records and other records of Trinity county were destroyed by fire in November, 1872, and the court records, but not the deed records, of said county were again destroyed by fire in 1876."

"(15) Neither of the three judgments recited in the deed executed by Clifton as sheriff of Trinity county, nor the executions recited therein, or certified copies thereof were offered in evidence, but I conclude from the recitals in said sheriff's deed and the proof of the destruction of the records of Trinity county as aforesaid, that said judgment in fact existed against the said A. J. Frisby and wife Margaret Frisby, were valid judgments and were rendered as recited in the sheriff's deed, and that the executions were issued thereon as recited in the sheriff's deed, and the sales regularly made thereunder."

[5] It appears therefrom that at the time of the levy and sale under the said executions the title to said lands were vested in Margaret Frisby; these executions were issued as against A. J. Frisby and Margaret Frisby. Where a sheriff has executions in his hands for levy, and he does levy, and there is nothing in the record to show that any one execution had priority over the other, there is no requirement of the statutes of our state that there shall be a separate levy and sale under each. The sheriff is authorized and required by law to levy all of such executions, and there is no reason why such sale should not take place under the sheriff's authority under the three executions levied on the land, and he then to apportion the money received at such sale among the execution creditors.

[6] The records having been burned and the sheriff's deed being more than 30 years old, it was admissible as an ancient instrument, and the recitals in the deed were sufficient to establish the judgment, executions, and returns recited therein. To sustain our position on this proposition, we quote from the following Supreme Court decisions:

Judge Gaines in White et al. v. Jones, 67 Tex. 640, 4 S. W. 162, says:

"It was held by this court in the case of Terrell v. Martin, 64 Texas, 124, that the recitals in an administrator's deed are not sufficient to show an order for the sale of land of the estate. Of the correctness of that ruling as applied to the facts of the case there can be no doubt. The record of the proceedings of a court, if they be in existence, are necessarily the best and the only competent evidence of its orders. No reason was shown in that case why a copy of the minutes of the court could not be had, and hence the court in that case was right in holding that the recitals in the deed were not sufficient.

"Here, however, the entire records, including both the file papers and minutes relating to this estate covering the time at which the orders in question were claimed to have been made were destroyed. At the time of the trial of this case in the court below twenty-five years had elapsed since the sale of the lots were made. The administrator who made it was proved to be dead. Under such circumstances it may be that it should be presumed that the orders were made as the administrator's deeds set them forth, without other evidence tending to support that conclusion, save the failure of the heirs to set up their claim for so long a time. But it was also shown that the adminis-

trator de bonis non returned the purchase-money note upon his inventory, and the court finds upon sufficient evidence that the note was paid.

"In Baker v. Coe, 20 Texas, 430, this court held that, although the records of the court failed to show that everything had been done which was required by law in making sales of the property of deceased persons, yet the sale having been proved and nothing shown to impeach its fairness, it would be presumed that the court and its officers did their duty and the validity of the sale would be sustained. The lapse of time in that case was about twenty-five years, as in this. For a stronger reason the same presumption must be indulged in the case before us, in which it was admitted that the records relating to the estate at the time of the transaction were entirely destroyed."

Justice Henry, in Ruby v. Von Valkenberg, 72 Tex. 466. 10 S. W. 518, in passing upon the admissibility of the sheriff's deed and the effect of the recitals therein, says:

"The foreclosure part of this judgment depends entirely upon the petition. If the petition is lost or destroyed it is equivalent in this particular to the loss of the judgment, and it becomes proper to supply it by proof or presumption, just as it would if the entire judgment were lost. If this was a recent transaction in which it became necessary to prove the existence of a judgment and order of sale to support the sheriff's deed, then, leaving out of view the question of the sufficiency in other respects of the predicate laid by the evidence offered for that purpose, the sheriff's deed would have to be held improperly admitted because no sufficient evidence of the contents of the lost instrument was produced.

"In this case the sheriff's deed was dated and properly recorded in 1847. Its recitals of the authority under which it was executed are in all respects full and complete. As far as the record now exists, it verifies these recitals. The descriptions in the deed of the land conveyed by it is sufficient. It could not have properly been admitted in evidence without a satisfactory reason for the nonproduction of the record under authority of which it was executed. It is so held in the case of Tucker v. Murphy, 66 Tex. 360.

"When the loss of a public record is in question, it is usually more satisfactory for the proof to be made by the keeper of the record. No inflexible rule on this subject has been established. In the case of Mays v. Moore, 13 Texas, 88, the court says: 'It is always a question addressed to the discretion of the court to determine whether the basis has been laid by proving the loss or destruction of a record to let in proof that such record once did exist.'

"In this case an attorney of the court testified that both himself and the clerk had searched for the records with diligence and that they could not be found. The evidence goes further and shows that there was evidence in the office of the clerk that the papers had been withdrawn by a firm of lawyers, one of whom had moved away years before, and the other on being applied to declared that he had no knowledge of them. We attach importance too to the fact

that the missing records belonged to the court in which the trial was being conducted. We think it was a proper exercise of the discretion of the court to hold that the absence of the records was sufficiently accounted for and that the sheriff's deed was admissible in evidence as an ancient instrument."

The Supreme Court, speaking by Justice Stayton, in the case of Giddings v. Day, 84 Tex. 606-607, 19 S. W. 682, holds as follows:

"When the deed from the sheriff was offered it was objected to, on the ground that it was void on its face for want of sufficient description of the land attempted to be conveyed, and on the further ground, that it was not admissible in the absence of the judgment and execution under which the sale was claimed to have been made. Neither the execution nor the judgment on which it was claimed to be based were offered in evidence, nor was there any offer to prove that they ever existed otherwise than by recitals in the sheriff's deed and by the affidavit of an attorney of the destruction of the records that 'contained the judgment and execution.'

"The sheriff's deed recited a judgment rendered on March 29, 1851, by A. Stewart, justice of the peace for Galveston county, against John H. Kam and in favor of David Ayers, and the receipt of an execution issued on that judgment by virtue of which the sale was made by the sheriff of Travis county.

"The sheriff's deed declared that a levy was made on, and that a sale was made of, land described as 'one-third of a league of land, known as survey No. 280, on David's creek, a branch of the Colorado river, about one mile from the mouth of said river, and about twelve miles from the mouth of the Concho, described in letters patent dated 15th day of October, A. D. 1851,' and purports to convey the land thus described without otherwise describing it. The deed recites, that the sale was made on the first Tuesday in Sepember, 1851, and bears date September 2 of same year.

"A patent bearing date October 15, 1850, was read in evidence, conveying to John H. Kam 'one-third of a league of land, situated and described as follows: In Travis county, known as survey No. 280, on David's creek, a branch of the Colorado river, about one mile from said river, and about twelve miles below the mouth of the Concho river,' of which the field notes were given in the patent.

"The petition described the land sued for as 'the north half of the John H. Kam survey No. 280, situated in Coleman county, Texas,' and gave the field notes of that as in the patent. In connection with the sheriff's deed, plaintiffs proposed to prove by three witnesses, 'that the land in controversy was patented to John H. Kam; that it suited the description of the property conveyed in said deed; that it was survey No. 280, of one-third of a league; that it was on David's creek, a branch of the Colorado river; that it was about one mile from said river, and about one mile from the mouth of said creek, and about twelve miles below the mouth of the Concho; and that it was located in the territory which was at the date of said deed a part of Travis county, and that there was only one survey No. 280 in that locality.'

"All of the evidence referred to was rejected,

as were deeds connecting plaintiffs with the conveyance made by the sheriff of Travis county.

"Proof of the destruction of the records of the justice court from which the execution purported to issue having been made, we are of opinion that after the lapse of more than thirty years the existence of the judgment and execution recited in the sheriff's deed ought to be presumed, and the real question is as to the sufficiency of the description of the land contained in that deed."

The plaintiff insists that the outstanding title has no standing in court, because no one claims it, and that it has long since been abandoned, and also that the title held by the Frisbys was subject to an unsatisfied vendor's lien at the time the levy was made.

[7] As to the first contention, the plaintiff invokes the aid of the court to recover on a superior title. He must show such superior legal or equitable title in order to recover. He depends upon the strength of his title. If there is an outstanding superior legal title, he fails of the requirements of the law to entitle him to recover. It matters not that at the very time no one is asserting any rights under the outstanding title—that title is not in litigation and the courts are not concerned in any question affecting it except the legality of that outstanding title, and whether or not it is superior to that of the plaintiff.

In reply to the second contention, we cannot say that the notes recited in the deed from A. J. Frisby and wife to J. Lyle Smith, administrator, et al., were notes given for the purchase of the land. The deeds conveying this land to A. J. Frisby and that from Frisby and wife, Elizabeth Frisby, to Mrs. McDonald all recited a cash consideration, and vested the legal title in each of the parties without reservation. If the notes recited in the deed from A. J. Frisby and Margaret Frisby (McDonald) were really given in payment of the land, they were not secured by the reservation of the legal title. The plaintiff by his pleading has not set up any right or claim by reason of any implied lien to secure the payment of said notes, if such lien ever existed. Further, any right to recover on said notes is shown by the record to be long since barred.

We have considered the other assignments of error of plaintiff in error as set out in the application for the writ and do not think they present any question of serious import, and hence we overrule same.

We therefore hold that the defendants having shown a superior outstanding title against the claim of title by the plaintiff that such outstanding title defeats plaintiff's recovery, and recommend to the honorable Supreme Court that the judgment of the Court of Civil Appeals in this case be reversed, and that the judgment of the trial court be reversed and reformed so that said judgment shall be rendered only that plaintiff take nothing by his suit in this cause and that the defendants take nothing by their cross-action.

CURETON, C. J. November 22, 1922. Judgments of the Court of Civil Appeals and district court both reversed, and judgment rendered that plaintiff in error take nothing by his suit, and that defendants in error take nothing by their cross-action.